UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY MARTINEZ et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WEST SACRAMENTO et al.,<br><br>Defendants. | No. 2:16-cv-02566-TLN-EFB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND AS TO NON-FEDERAL DEFENDANTS** |

This matter is before the Court on Plaintiffs Sonny Martinez, Jessica Martinez, individually and as guardian ad litem for minors VJM, GRM, ARM, and EVM, and Joann Ramirez's (collectively, "Plaintiffs") Motion for Leave to File First Amended Complaint. (ECF No. 64.) Defendants City of West Sacramento, West Sacramento Police Department, Jason M. Winger, David M. Stallions, Michael Duggins, Kenneth E. Fellows, Carl J. Crouch, Eric M. Palmer, Matthew S. Luiz, Louis Cameron, City of Stockton, and Stockton Police Department (collectively, the "Non-Federal Defendants") filed an opposition. (ECF No. 65.) For the reasons set forth below, the Court GRANTS Plaintiffs' motion as to all Non-Federal Defendants.

///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed suit against the Non-Federal Defendants, an individual named Dan T. Zwicky, and an individual named Rafael Altamirano, on October 27, 2016. (ECF No. 1.) The Complaint alleges deprivations of Plaintiffs' constitutional rights as guaranteed by the First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. (ECF No. 1.) The Complaint also makes out numerous supplemental claims for relief under the California Constitution, California's common law of tort, and its statutory law. (ECF No. 1.)

On December 29, 2016, the Non-Federal Defendants filed a motion to dismiss the Complaint for failure to comply with Federal Rule of Civil Procedure ("Rule") 8 and for failure to state a claim under Rule 12(b)(6). (ECF No. 28.) On February 13, 2017, the United States notified the Court of its substitution in place of Defendant Zwicky for purposes of all state law tort claims alleged against him, pursuant to provisions of the Federal Tort Claims Act codified at 28 U.S.C. § 2679. (ECF No. 37.) The United States thereafter moved to dismiss all state law tort claims originally alleged against Zwicky because Plaintiffs failed to comply with the administrative exhaustion requirements of the Federal Tort Claims Act. (ECF No. 44.) Plaintiffs responded by requesting an evidentiary hearing to challenge the validity of this limited substitution by the United States in place of Zwicky. (ECF No. 54.) With respect to the non-state-law tort allegations against Zwicky for which the United States did not substitute itself as a defendant, Zwicky timely moved to dismiss them on the grounds that (i) Plaintiffs failed to state a claim under Rule 12(b)(6) and (ii) he is immune from suit under the doctrine of qualified immunity. (ECF No. 43.)

These motions remain pending before the Court, and Plaintiffs now request leave to amend the Complaint under Rule 15(a)(2). (ECF No. 64.) Plaintiffs' proposed First Amended Complaint ("FAC") would add five defendants—Yolo County, the Yolo County District Attorney, David Delaini, Robert A. Gorman, and Ryan J. Couzens—as well as causes of action arising under the Fifth and Sixth Amendments to the U.S. Constitution. (ECF No. 64.) The United States and Zwicky (collectively, the "Federal Defendants") filed an opposition to Plaintiffs' request for leave to amend. (ECF No. 66.) The Non-Federal Defendants also filed an

opposition to Plaintiffs' request for leave to amend, incorporating by reference the relevant Federal Defendants' arguments against granting leave to amend. (ECF No. 65.)

A. Relevant Factual Allegations

Plaintiffs' proposed FAC would allege that, as relevant to Plaintiffs' pending request for leave to amend as to the Non-Federal Defendants, the following summary of events occurred.

On October 24, 2015, a thirteen-year-old female named Alize Valadez was shot from the street while she was inside a residence in West Sacramento. (ECF No. 64 ¶ 69.) The tragic shooting received widespread local media coverage. (ECF No. 64 ¶¶ 76, 97.) However, law enforcement officers encountered difficulty uncovering evidence pointing to a suspect. (ECF No. 64 ¶¶ 100–01.) Following local news broadcasts regarding the shooting of Ms. Valadez, Altamirano contacted Zwicky to offer information regarding the shooting. (ECF No. 64 ¶ 102.) Altamirano was an informant known to the Stockton Police Department, and Zwicky was an officer of the Stockton Police Department. (ECF No. 64 ¶¶ 19, 21, 54.) The two met at the Stockton Police Department on October 26, at which point Altamirano told Zwicky that Sonny Martinez (i) had called Altamirano and confessed to shooting Ms. Valadez, and (ii) drove a 2006 white Chevrolet Silverado with black stripes on the bottom. (ECF No. 64 ¶ 108.)

Zwicky proceeded to contact a member of the West Sacramento Police Department to relay the information he had learned from Altamirano. (ECF No. 64 ¶¶ 116–17.) The West Sacramento Police Department officer told Zwicky that the shooting of Ms. Valadez may have been a gang-related retaliation against her father. (ECF No. 64 ¶ 118.) At the West Sacramento Police Department's request, Zwicky (i) began to drive Altamirano to West Sacramento to talk to the officers investigating the shooting of Ms. Valadez, and (ii) instructed Altamirano to contact Sonny Martinez via text message. (ECF No. 64 ¶¶ 119–20.) When Altamirano's attempt to contact Sonny Martinez went unacknowledged, Zwicky and Altamirano instead drove to Sonny Martinez's residence so that Altamirano could—unsuccessfully, it turned out—attempt to record Martinez admitting to the shooting. (ECF No. 64 ¶¶ 120–24.) Zwicky and Altamirano then completed their drive to West Sacramento, during which they discussed the shooting. (ECF No. 64 ¶ 154.) Meanwhile, still on October 26, West Sacramento police officers received information

from an eyewitness to Ms. Valadez's shooting that identified the shooter's vehicle as being substantially different from the vehicle Martinez typically drove. (ECF No. 64 ¶¶ 125–53.)

When Zwicky and Altamirano arrived at the West Sacramento Police Department headquarters on October 26, they and a host of West Sacramento Police Department officers met while Altamirano's cellular phone underwent a Cellibrite analysis. (ECF No. 64 ¶¶ 155–57.) This analysis revealed that Martinez did not contact Altamirano by phone, meaning he could not have admitted to the shooting as Altamirano claimed. (ECF No. 64 ¶ 158.) Following this initial meeting, the investigating officers held a second meeting at which they agreed to disregard the truth, as revealed by the Cellibrite analysis, that Martinez never contacted Altamirano to confess to shooting Ms. Valadez. (ECF No. 64 ¶ 162.) At this second meeting, the investigating officers decided to use Altamirano's false account of Martinez's confession to obtain warrants and withhold exculpatory material from Martinez, steps that they hoped would lead to actual evidence implicating Ms. Valadez's shooter. (ECF No. 64 ¶¶ 163–66.) Accordingly, at Zwicky's direction, Altamirano then made numerous attempts to contact Martinez via phone and text message, none of which were successful. (ECF No. 64 ¶¶ 159–61.) The investigating officers then recorded a statement from Altamirano, a statement which differed from the account of Martinez's fabricated confession that Altamirano had initially provided only to Zwicky. (ECF No. 64 ¶ 168.)

Based in part on the information obtained from Altamirano, West Sacramento Police Department officers submitted false probable cause affidavits in applications for warrants to search Martinez's residence, vehicle, and other property for evidence related to the shooting of Ms. Valadez. (ECF No. 64 ¶¶ 176–200.) Members of the alleged law enforcement conspiracy also installed a tracking device on Plaintiffs' vehicle without a valid warrant authorizing them to do so, (ECF No. 64 ¶¶ 172–74), and falsified reports to cover up this illegal action, (ECF No. 64 ¶ 175). Along with a SWAT team that Zwicky arranged, the alleged law enforcement conspirators then served and executed the improperly obtained warrants at the residence where Plaintiffs were sleeping, using unconstitutionally excessive force and means. (ECF No. 64 ¶¶ 201–10.) On the basis of the same flawed warrants, members of the alleged conspiracy

confined Plaintiffs to their home (and, in Sonny Martinez's case, to law enforcement custody) while they searched and seized Plaintiffs' property. (ECF No. 64 ¶¶ 211–42.)

Once Martinez was falsely arrested as a suspect in the shooting of Ms. Valadez, the conspirators interrogated him without reading him his *Miranda* rights and without receiving permission to so interrogate him from Martinez himself or from his attorney. (ECF No. 64 ¶¶ 254–59.) They also repeatedly misled various judicial officers to ensure that Martinez was denied bail despite the lack of actual evidence tying him to the shooting of Ms. Valadez; Zwicky specifically agreed to falsify evidence and perjure himself by testifying at a probable cause hearing that Altamirano—on whose word the entire case against Martinez at this point rested—was a reliable informant. (ECF No. 64 ¶¶ 260–64, 271–300.) The conspirators—which by this point included individuals from the Yolo County District Attorney's Office—also joined forces to ensure that Martinez was charged in the shooting of Ms. Valadez and that the preliminary hearing in this criminal case was delayed, all while they knew Martinez was not the shooter. (ECF No. 64 ¶¶ 301–06.) This criminal case against Martinez was eventually dismissed for lack of evidence. (ECF No. 64 ¶¶ 296, 306.)

## II. STANDARD OF LAW

Granting or denying leave to amend a complaint rests in the sound discretion of the trial court. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996) (citing *Rhoden v. United States*, 55 F.3d 428, 432 (9th Cir. 1995)). It is well established that "a party may amend its pleading only with the opposing party's written consent or the court's leave," and the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

"Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). When weighing these factors to determine whether to grant leave to amend, the Court must draw "all inferences in favor of granting the motion." *Griggs v.*

*Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).

Indeed, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) (citing *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997)). The Ninth Circuit has "repeatedly stressed that the court must remain guided by 'the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipsis in original) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (stating that granting leave to amend represents a policy that "is to be applied with extreme liberality"). Finally, a district court should grant leave to amend a complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### III. ANALYSIS

#### A. Undue Delay

The Non-Federal Defendants argue that granting leave to amend will create undue delay because it will add an additional round of pleadings to an already protracted litigation. (ECF No. 65 at 3–4.)

In evaluating undue delay, the Court inquires "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (quoting *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990)). "Undue delay by itself . . . is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Indeed, denying leave to amend is reversible error "where the district court d[oes] not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment." *Id.* As explained below, the Non-Federal

Defendants have not identified the required "strong evidence" of bad faith, prejudice, or futility that would justify denying Plaintiffs' motion to amend. *Sonoma Cty. Ass'n of Retired Emps.*, 708 F.3d at 1117.

Accordingly, there is no need for the Court to analyze whether Plaintiffs unduly delayed moving to amend because even if they had, this alone would be "insufficient to justify denying [their] motion to amend." *Bowles*, 198 F.3d at 758.

### B. Bad Faith

The Non-Federal Defendants do not directly argue that Plaintiffs' request for leave to amend is made in bad faith. (ECF No. 65 at 3 ("Plaintiffs' motion should be denied as creating undue delay, prejudicing the opposing parties due to the additional delay, and being a futile amendment.").) Instead, the Non-Federal Defendants incorporate by reference the Federal Defendants' argument on this point, (ECF No. 65 at 4), which is that Plaintiffs' amended conspiracy allegations are in bad faith because they are so implausible that they must be the product of a violation of Rule 11(b) of the Federal Rules of Civil Procedure, (ECF No. 66 at 3–4).

A motion to amend is made in bad faith where there is "evidence in the record which would indicate a wrongful motive" on the part of the litigant requesting leave to amend. *DCD Programs*, 833 F.2d at 187; *see also Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) ("In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006))). For instance, courts have found bad faith where leave to amend was sought as a ploy to destroy a federal district court's diversity jurisdiction, *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987), or where the same claims for which leave to amend was sought had recently been denied in a related action, *Bonin v. Vasquez*, 807 F. Supp. 586, 587 (C.D. Cal. 1992).

Here, there is little "evidence in the record which would indicate a wrongful motive" on Plaintiffs' behalf in requesting leave to amend. *DCD Programs*, 833 F.2d at 187. Plaintiffs justify their request for leave to amend by representing to the Court that they "continued their informal investigation of the events and occurrences around the arrest and malicious prosecution

of Mr. Marteinz [sic] and discovered additional information to further their case." (ECF No. 64-1 at 2.) Plaintiffs also represent that in requesting leave to amend, they "made good faith efforts to accommodate the objections the defendants raised in their motions to dismiss," and that they filed their motion "once they determined they had sufficient evidence to proceed with the amendments." (ECF No. 64-1 at 3.) While these representations are somewhat generic, presently this Court sees no reason to disbelieve them. First, it is not unreasonable to continue investigating facts after filing a complaint. *See Eminence Capital*, 316 F.3d at 1053 (holding that repeated efforts to meet heightened pleading standard not bad faith where plaintiffs proffered that "additional evidence was forthcoming which would enable them to add necessary details to their complaint"). This is particularly true in a factually intensive case such as this that involves numerous individuals, conspiracy allegations, and related criminal proceedings. (*See, e.g.*, ECF No. 1 ¶¶ 9–21, 141.5–41.9.)

Second, the Court is bound at this stage of the litigation to draw "all inferences in favor of granting the motion," and accordingly infers that Plaintiffs acquired the additional facts alleged in the FAC through good-faith investigation. *Griggs*, 170 F.3d at 880. Third, it is Defendants' burden at this stage of the litigation to defeat the presumption under Rule 15(a) in favor of granting leave to amend by making "a strong showing of" bad faith, which they have yet to do. *Eminence Capital*, 316 F.3d at 1052. And to the extent Defendants believe they are unfairly hamstrung in their ability to meet this burden due to Plaintiffs' counsel's refusal to provide details of its factual investigations that gave rise to the FAC, (ECF No. 66 at 4 n.1), denying Plaintiffs leave to amend their Complaint is not the appropriate recourse, *see United States v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1154 (C.D. Cal. 2005) (rejecting motion to strike that was predicated on claimed violations of Rule 11(b)).

Accordingly, this factor weighs in favor of granting leave to amend.

C. Prejudice

The Non-Federal Defendants assert that they will be prejudiced by the additional litigation delay that would occur if leave to amend is granted. (ECF No. 65 at 3–4.)

Prejudice is the factor that weighs most heavily in the Court's analysis of whether to grant

leave to amend. *Eminence Capital*, 316 F.3d at 1052. "Prejudice results when an amendment would unnecessarily increase costs or would diminish the opposing party's ability to respond to the amended pleading." *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, No. 1:08-CV-01086-AWI, 2011 WL 3328398, at *2 (E.D. Cal. Aug. 2, 2011) (citing *Morongo Band of Mission Indians*, 893 F.2d at 1079). Courts have found proposed amendments prejudicial where leave to amend is requested as a relevant discovery deadline nears or has already passed. *E.g., Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("The additional causes of action [in the proposed amended complaint] would have required further discovery, which was to close five days after the motion to amend was filed."); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."). Prejudice to the non-moving party can also exist where leave to amend is requested shortly before trial. *Singh v. City of Oakland, Cal.*, 295 F. App'x 118, 122 (9th Cir. 2008) (finding no abuse of discretion in denial by district court of plaintiff's request to file a Third Amended Complaint one month before trial).

Defendants' argument that granting leave to amend will prejudice them is predicated largely on the delay that would occur if leave to amend is granted before the Court rules on the pending motions to dismiss. (ECF No. 66 at 4–5 ("It is a virtual certainty that defendants will also move to dismiss [the proposed amended] complaint, if filed, on the same or similar grounds as in the pending motion.").) The Court does not agree that granting leave to amend will result in any unwarranted increase in this litigation's timeline. Even if the Court were to deny leave to amend until it ruled on Defendants' pending motions to dismiss the Complaint, the Court's decision to dismiss any of the Complaint's claims would almost certainly be without prejudice. *See Watison*, 668 F.3d at 1117 (holding that a district court should grant leave to amend a complaint unless the pleading could not possibly be cured by the allegation of other facts). This would activate a subsequent round of pleading and motion practice anyway, with the only difference between the first and second rounds being that the parties would have the benefit of the Court's analysis of the sufficiency of the allegations in the original Complaint. But the Court's

analysis would be worth relatively little by that point because it would be directed at a pleading that is already effectively superseded. (*See* ECF No. 64-1 at 2 (stating that the proposed FAC, "as much as possible, accommodates the defendants' objections to the original Complaint")) Hence, there is little evidence that granting Plaintiffs leave to amend at this stage of the litigation "would unnecessarily increase costs or would diminish the opposing party's ability to respond to the amended pleading." *BNSF Ry. Co.*, 2011 WL 3328398, at *2.

Furthermore, discovery in this case has yet to commence and trial is not imminent. Thus, even if granting leave to amend would necessarily add to the timeline of this case, Defendants have not pointed to any procedural prejudice that would result from allowing Plaintiffs to amend their pleadings. *Accord, Johnson v. Serenity Transp., Inc.*, No. 15-CV-02004-JSC, 2015 WL 4913266, at *5 (N.D. Cal. Aug. 17, 2015) (finding no prejudice in allowing amendment where, "although the case has been pending for over a year, the parties are still in the pleading stage, which makes prejudice doubtful"); *Organic Pastures Dairy Co., LLC v. Sebelius*, No. 1:12-CV-02019-SAB, 2013 WL 1966464, at *3 (E.D. Cal. May 10, 2013) (finding no prejudice or undue delay where leave to amend was requested prior to commencement of discovery). The delays that have attended this case are not so much prejudicial to Defendants as they are a natural consequence of modern civil litigation.

Accordingly, the Court views this factor as weighing in favor of granting leave to amend.

### D. Futility

The Non-Federal Defendants argue that amendment would be futile because the FAC runs afoul of Rule 8's pleading standards. (ECF No. 65 at 4.) Specifically, the Non-Federal Defendants incorporate by reference the arguments from their motion to dismiss that the proposed FAC must be dismissed because it is too long, contains irrelevant material, and fails to identify which claims for relief are asserted against which defendants. (ECF No. 28-1 at 2–4.) The Non-Federal Defendants also incorporate by reference the Federal Defendants' argument that leave to amend should be denied because the proposed FAC's conspiracy allegations are implausible. (ECF No. 65 at 4.)

        *i.*    *Conciseness Analysis*

That a complaint is long and contains irrelevant material does not necessarily mean it violates Rule 8. Where a complaint is "logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which lists the liable Defendants and legal basis therefor," it meets the requirements of Rule 8 even if it is burdened with irrelevant facts that increase its length. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008). This is because the purpose of Rule 8's concise pleading standard is not for brevity's sake alone, but to make it as simple as possible for defendants to understand and respond to the factual and legal bases for the claims made against them. *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (upholding Rule 8 dismissal of complaint that made it impossible to "determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery").

While it is true that the FAC is approximately fifty pages, it is logically organized, (*see* ECF No. 64 at 4–6), it contains a description of the parties, (ECF No. 64 ¶¶ 4–23), it contains a factual background alleged chronologically, (ECF No. 64 ¶¶ 25–313), and it includes a list of the claims made against particular defendants as well as the legal basis for those claims, (*see, e.g.*, ECF No. 64 ¶¶ 171, 250, 254). It is true that the FAC contains some extraneous factual material. For instance, it is irrelevant to the litigation what exact units Martinez's landlord hired him to repair before he met Altamirano. (ECF No. 64 ¶ 26.) But just because the proposed FAC contains some irrelevant facts does not mean that it is so confusing and opaque that it must be dismissed. *See Hearns*, 530 F.3d at 1132 (overturning Rule 8 dismissal because the complaint at issue was "not 'replete with redundancy and largely irrelevant'" even though it "set out more factual detail than necessary").

Thus, though the proposed FAC is lengthy and contains a substantial number of paragraphs and allegations, the Non-Federal Defendants should not have any significant difficulty understanding the factual basis for the legal claims made against them.

### ii. Plausibility Analysis

Defendants argue that granting leave to amend would be futile because the allegations of a conspiracy in the FAC are implausible in that they fail to explain "how or why such a far-flung

conspiracy would come to pass, nor what motivation the F.B.I., City of Stockton, or other uninvolved agencies could have for participating in such a scheme." (ECF No. 66 at 6.) Because of this supposed factual deficiency, Defendants argue that Plaintiffs' "allegations do not pass the *Iqbal* smell test." (ECF No. 66 at 6.)

There is no dispute that to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

To meet this standard in the context of a section 1983 conspiracy claim, "a plaintiff must show: '(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.'" *Pelenty v. City of Seal Beach*, 588 F. App'x 623, 624 n.2 (9th Cir. 2014) (quoting *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991)). And to demonstrate the existence of such an express or implied agreement to violate a person's civil rights,

> the plaintiff must show that the conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc) (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999)). "[T]he fact of the conspiracy may make a party liable for the unconstitutional actions of the party with whom he has conspired." *Id.* Furthermore, "direct evidence of improper motive or an agreement among the parties to violate a

plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1302 (9th Cir. 1999).

Here, the FAC contains sufficient factual allegations to justify the plausible inference that Defendants conspired to violate Plaintiffs' civil rights. *See Lacey*, 693 F.3d at 935. The FAC alleges a set of discrete meetings shortly following Ms. Valadez's shooting at which Defendants agreed to disregard the lack of evidence pointing to Martinez as a suspect. (ECF No. 64 ¶¶ 155–56, 162–66.) Such a meeting of law enforcement officers, particularly following the results of a technical analysis of Altamirano's cellular phone that belied the story he told Zwicky of Martinez's confession, (ECF No. 64 ¶ 158), gives rise to the plausible inference that Defendants "reached a unity of purpose" to fabricate probable cause to arrest and detain Martinez for shooting Ms. Valadez, *Lacey*, 693 F.3d at 935 (quoting *Gilbrook*, 177 F.3d at 856). Defendants' motivation to enter into the conspiracy can reasonably be inferred, *see Lacey*, 693 F.3d at 935; *Griggs*, 170 F.3d at 880, from the fact that Defendants had no other leads or suspects in the shooting investigation at the time they met, (ECF No. 64 ¶¶ 100, 163). It is reasonable to infer that this fact, coupled with the intense media scrutiny surrounding the shooting, motivated Defendants to arrest and detain Martinez as the suspected shooter without probable cause in the hopes that additional evidence furthering the investigation would follow. (ECF No. 64 ¶¶ 97, 100, 164.)

The FAC also contains factual allegations that prior to and following these meetings, Defendants took joint action in furtherance of the conspiracy. *See Lacey*, 693 F.3d at 935 ("A defendant's knowledge of and participation in a conspiracy may be inferred from . . . evidence of the defendant's actions." (quoting *Gilbrook*, 177 F.3d at 856–57)); *Mendocino Envtl. Ctr.*, 192 F.3d at 1302 (holding that "it will almost always be necessary to infer [conspiratorial] agreements from . . . the existence of joint action"). This alleged joint action included strategizing with one another regarding the investigation, (ECF No. 64 ¶¶ 116–19, 154), coordinating the use of Altamirano to record a confession from Martinez, (ECF No. 64 ¶¶ 116–24), installing a tracking device on Plaintiffs' truck without a warrant, (ECF No. 64 ¶¶ 172–73), falsely swearing that

exigent circumstances justified this tracking, (ECF No. 64 ¶ 175), incorporating false information into probable cause affidavits, official reports, and written statements, (ECF No. 64 ¶¶ 176–200, 270–73), serving search warrants together and with the assistance of a Stockton Police Department SWAT team, (ECF No. 64 ¶¶ 201–05, 215, 220–27, 236), and coordinating the submission of false testimony during preliminary hearings in the criminal case against Martinez that was eventually dismissed for lack of evidence, (ECF No. 64 ¶¶ 296, 298–99, 306). Given that the Court must draw all reasonable inferences in favor of granting Plaintiffs' motion for leave to amend, *Griggs*, 170 F.3d at 880, it is reasonable to infer from these allegations that Defendants "share[d] the common objective of the conspiracy," *Lacey*, 693 F.3d at 935 (quoting *Gilbrook*, 177 F.3d at 856), to arrest and detain Martinez for the shooting of Ms. Valadez without probable cause in order to further their investigation, (ECF No. 64 ¶ 164).

Much of the authority cited by Defendants to support their implausibility argument is not convincing. In *Denton v. Hernandez*, 504 U.S. 25, 27 (1992), the Supreme Court examined an entirely different legal standard than that involved here, namely "the appropriate inquiry for determining when an *in forma pauperis* litigant's factual allegations justify a § 1915(d) dismissal for frivolousness." The Court described that standard as being met "when the facts alleged rise to the level of the irrational or the wholly incredible." *Id.* at 33. It cannot be said that Plaintiffs' allegations in this case are "irrational or wholly incredible," *id.*, particularly given the fact that the criminal case against Martinez that Defendants worked up was eventually dismissed for lack of evidence, (ECF No. 64 ¶¶ 296, 306). Similarly, the court in *Balik v. Upton*, No. 1:15-cv-01419-AWI-JLT, 2015 WL 5834336 (E.D. Cal. Oct. 1, 2015), analyzed whether a pleading brought by a litigant proceeding *in forma pauperis* was frivolous. The court in that case found the pleading to be fanciful and lacking an arguable basis in fact because it alleged that a member of the U.S. House of Representatives was "responsible for Plaintiff's car not working, his super-model girlfriend breaking up with him, [and] the Chocolate Shoppe Ice Cream CEO deciding to not do business with him." *Id.* at *3. Such claims are clearly fanciful; the instant claims involving law enforcement officers conspiring to manufacture evidence in an effort to gain a conviction in the shooting of an innocent girl are not.

In short, Defendants have not made a strong showing that the constitutional violations Defendants allegedly conspired to commit are so implausible that it would be futile to allow them to be amended as Plaintiffs request to do via the FAC. *Eminence Capital*, 316 F.3d at 1052.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for leave to amend as to the Non-Federal Defendants, (ECF No. 64). Accordingly, the Court DENIES as moot the Non-Federal Defendants' motion to dismiss the Complaint, (ECF No. 28).

IT IS SO ORDERED.

Dated: 2/4/2019

Troy L. Nunley
United States District Judge