UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY MARTINEZ; JESSICA MARTINEZ, individually and as the mother and Guardian Ad Litem for minors VJM, GRM, ARM, AND EVM; AND JOANN RAMIREZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WEST SACRAMENTO; WEST SACRAMENTO POLICE DEPARTMENT; JASON M. WINGER; DAVID M. STALLIONS; MICHAEL DUGGINS; KENNETH E. FELLOWS; CARL J. CROUCH; ERIC M. PALMER; MATTHEW S. LUIZ; LOUIS CAMERON; DAVID DELANI; WEST SACRAMENTO DOES 1 through 25; CITY OF STOCKTON; STOCKTON POLICE DEPARTMENT; DAN T. ZWICKY; STOCKTON DOES 26 through 50; YOLO COUNTY; ROBERT A. GORMAN; RYAN J. COUZENS; YOLO COUNTY DOES 51 through 75; RAFAEL ALTAMIRANO; DOES 76 through 100; and UNITED STATES OF AMERICA,<br><br>Defendants. | No. 2:16-cv-02566-TLN-JDP<br><br>**ORDER** |

///

///

1

This matter is before the Court on Defendant the United States' (the "Government") Motion to Dismiss. (ECF No. 129.) Plaintiffs Sonny Martinez ("Sonny"), Jessica Martinez — individually and as Guardian Ad Litem for minors ARM and EVM ("Jessica"), Veronica J. Martinez ("Veronica"), Gabriel R. Martinez ("Gabriel"), and Joann Ramirez ("Joann") (collectively, "Plaintiffs") filed an opposition (ECF No. 136), and the Government filed a reply (ECF No. 144). For the reasons set forth herein, the Government's Motion to Dismiss (ECF No. 129) is GRANTED.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

A. Plaintiffs' Allegations

This action arises from Sonny's arrest and criminal prosecution in relation to the October 24, 2015 shooting of Alize Valadez ("Valadez") in West Sacramento. Plaintiffs initiated this action on October 27, 2016, against multiple Defendants involved at all stages of the Valadez investigation, including Sonny's arrest and criminal prosecution. (*See generally* ECF No. 1.) In sum, Plaintiffs claim Defendants conspired to wrongfully investigate, arrest, and prosecute Sonny for the Valadez shooting, despite knowing he was innocent. (*See id.*)

As relevant to the instant Motion, the operative Second Amended Complaint ("SAC") alleges that, after the shooting, Defendant Rafael Altamirano ("Altamirano") contacted Defendant Stockton Police Department to provide a witness statement against Sonny. (*See* ECF No. 116 ¶¶ 157, 161–162.) Defendant Dan T. Zwicky ("Zwicky") worked with Altamirano to corroborate his statement.[1] (*See id.* at ¶¶ 158, 167–168, 176–177.)

Plaintiffs allege Zwicky had prior dealings with Altamirano and was therefore aware that

---

[1] Zwicky is a Stockton Police Department Officer who was federally deputized in 2014 to serve on the Federal Bureau of Investigation's ("FBI") Stockton Violent Gang Safe Streets Task Force (the "Task Force"), a joint task force established by the FBI and Stockton Police Department for purposes of addressing drug trafficking, gangs, and violent crime occurring within the geographic responsibility of the FBI Sacramento Division. (*See* ECF No. 116 ¶ 29; *see also* ECF Nos. 62-1, 62-2.) However, Plaintiffs allege Zwicky introduced himself to other individuals as a Stockton Police Officer and worked in that capacity at all times relevant to the investigation. (*See* ECF No. 116 ¶¶ 28, 31, 35–41, 171.) Plaintiffs additionally allege the FBI and Stockton Police Department's agreement to create the Task Force was illegally executed and therefore void, and they dispute the validity of the Task Force itself, as discussed in the Court's analysis herein. (*See id.* at ¶¶ 29, 39–40.)

Altamirano had a reputation for dishonesty and untrustworthiness, as well as a drug habit, past criminal convictions, and a history of providing inaccurate and unverifiable information to the Stockton Police Department for money. (*See id.* at ¶¶ 57, 159, 164.) Nevertheless, Zwicky introduced Altamirano to Defendant Officers of the West Sacramento Police Department to assist with the ongoing investigation of the Valadez shooting. (*See id.* at ¶¶ 170, 172, 176.) Thereafter, Zwicky and the other Officer Defendants determined Altamirano's statement was false and therefore knew Sonny was innocent, but nevertheless continued to pursue the investigation against Sonny. (*See id.* at ¶¶ 189–199.) Plaintiffs claim Zwicky conspired with the other Defendants to use Altamirano's false statement and other falsified information to improperly obtain warrants to search and arrest Sonny, and thereafter caused Sonny to be detained for as long as possible in order to generate new leads in an otherwise stalled investigation. (*See id.* at ¶¶ 188, 195, 202–205, 207–209, 219–247, 324, 327–328, 330, 340, 357–359, 402.) As a result, Sonny was arrested, criminally prosecuted, and incarcerated for 53 days until the case against him was dismissed due to lack of evidence. (*See id.* at ¶¶ 263, 338, 361–362.)

      B.     Procedural Background

Plaintiffs initiated this action on October 27, 2016, asserting fifteen causes of action against all Defendants under 42 U.S.C. § 1983 and California law. (ECF No. 1.) As relevant to this motion, the Government substituted in place of Zwicky pursuant to the Federal Tort Claims Act ("FTCA") and moved to dismiss Plaintiffs' state tort claims as originally asserted in the Complaint against Zwicky. (ECF Nos. 37, 44.) Plaintiffs subsequently moved to amend the Complaint and the Court simultaneously resolved several pending motions to dismiss and Plaintiffs' motion to amend by partially-granting the motion to amend. (*See* ECF Nos. 64, 69, 70.) Notably, the Court evaluated the parties' arguments pertaining to the Government's substitution for Zwicky and upheld the substitution with respect to the claims alleged in the Complaint and proposed First Amended Complaint ("FAC"). (*See generally* ECF No. 69.)

Plaintiffs filed the FAC on February 7, 2019 (ECF No. 71), and a series of filings ensued. (*See, e.g.,* ECF Nos. 77, 78, 80, 81, 83, 90, 107.) In their briefing, Plaintiffs repeatedly alluded to further amending the FAC and ultimately filed a motion to amend. (*See* ECF Nos. 92, 115.) The

Court thus elected to vacate the pending motions and directed Plaintiffs to file "a single, comprehensive Second Amended Complaint that complies with the Court's previous orders." (ECF No. 115.)

On October 21, 2019, Plaintiffs filed the operative SAC, which asserts federal and state claims against all Defendants, including Zwicky. (*See generally* ECF No. 116.) Substituting in for Zwicky (*see* ECF No. 128), the Government seeks to dismiss Plaintiffs' state law tort claims (Claims 7–14) as alleged against Zwicky in the SAC for lack of subject matter jurisdiction. (ECF Nos. 129, 129-1.) Specifically, the Government asserts Plaintiffs failed to comply with the exhaustion requirements under the FTCA. (*Id.*) Plaintiffs oppose the Government's Motion on the basis that the underlying substitution was invalid. (ECF No. 136.) The Court addresses these arguments in turn.

**II.    STANDARD OF LAW**

    A.    Federal Rule of Civil Procedure 12(b)(1)

A motion under Federal Rule of Civil Procedure ("Rule") 12(b)(1) challenges a federal court's jurisdiction to decide claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1); *see also id.* at 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A court considering a motion to dismiss for lack of subject matter jurisdiction is not restricted to the face of the complaint and may review any evidence to resolve disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *see also Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (in a factual attack on subject matter jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations."). In response to a motion under Rule 12(b)(1), the plaintiff has the burden of proving subject matter jurisdiction. *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

    B.    Federal Tort Claims Act

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). By enacting the FTCA, Congress waived the sovereign immunity of the United States with respect to tort liability. *See* 28 U.S.C. §

1346(b). The FTCA "gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." *Levin v. United States*, 568 U.S. 503, 506 (2013) (quoting 28 U.S.C. § 1346(b)(1)); *see also Williams v. Brooks*, 945 F.2d 1322, 1325 n.3 (5th Cir. 1991) (noting that the FTCA, with the exception of constitutional claims, is the exclusive remedy for claims brought against federal officers acting in their office).

However, the FTCA "requires, as a prerequisite for federal court jurisdiction, that a claimant first provide written notification of the incident giving rise to the injury, accompanied by a claim for money damages to the federal agency responsible for the injury." *Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015) (citing 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(b); *Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir. 1983)). The claimant must then receive a denial of the claim or await the passage of six months before filing suit. *See Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992) ("Section 2675(a) establishes explicit prerequisites to the filing of suit against the Government in district court. It admits of no exceptions."). Where plaintiffs fail to allege or provide evidence that they have exhausted their administrative remedies under the FTCA, the district court lacks jurisdiction over the claim and it must be dismissed. *See Johnson*, 704 F.2d at 1442.

### C. Westfall Act

The Supreme Court in *Osborn v. Haley* explained the Westfall Act's substitution procedure as follows:

> The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties. When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee.

549 U.S. 225, 229–30 (2007) (citing 28 U.S.C. § 2679). The U.S. Attorney's Office for the

5

district where a civil tort action is brought "is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose." 28 C.F.R. § 15.4.

"The Attorney General's decision regarding scope of employment certification [under the Westfall Act] is conclusive unless challenged. Accordingly, the party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017) (alteration in original) (quoting *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993)); *see also Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995) ("Certification by the Attorney General is prima facie evidence that a federal employee was acting in the scope of his employment at the time of the incident and is conclusive unless challenged."). The party challenging the Attorney General's course-and-scope certification must "allege sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment." *Saleh*, 848 F.3d at 889 (quoting *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009)).

When determining whether sufficient facts have been alleged to take a federal employee's conduct outside of the scope of that federal actor's employment, courts apply the principles of *respondeat superior* of the state in which the allegedly tortious conduct occurred. *Id.* The Court is the proper trier of fact regarding scope of employment questions and may rule based solely on the written record where all allegations against certification — taken as true — still fail to establish by a preponderance of the evidence that the federal employee acted outside the scope of employment. *Id.* at 892 n.11.

    D.  Vicarious Liability in California

In California, an employee is within the scope of employment "when in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Nationwide Mut. Ins. Co. v. Liberatore (Nationwide)*, 408 F.3d 1158, 1163 (9th Cir. 2005) (quoting *Farmers Ins. Grp. v. Cty. of Santa Clara*, 906 P.2d 440, 448 (Cal. 1995)). Stated another way, when

considering scope of employment questions, "the inquiry should be whether the risk was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer." *Id.*

As this authority makes clear, California's test for vicarious liability is interpreted extremely broadly in favor of finding an employee's actions to be within the scope of employment. *Id.*; *see also Tenwolde v. Cty. of San Diego*, 14 Cal. App. 4th 1083, 1091 (1993) (noting even acts "which clearly are not authorized by the terms of employment, and are willfully and obviously wrongful, have been held to be within the scope of employment of the governmental servant.") (citations omitted). California courts have applied this principle particularly expansively in cases involving law enforcement officers who are accused of "misuse of official authority." *See Mary M. v. City of L.A.*, 54 Cal. 3d 202, 220–21 (1991) (rape of an arrested female by on-duty police officer deemed within the scope of employment); *see also Tenwolde*, 14 Cal. App. 4th at 1091 (on summary judgment, finding lieutenant sheriff's actions in violation of state statute and sheriff's department's regulations may be deemed within scope of employment). The rationale for this liberal application of *respondeat superior* in the law enforcement context is that "[i]n view of the considerable power and authority that police officers possess, it is neither startling nor unexpected that on occasion an officer will misuse that authority" because "the risk of . . . tortious conduct is broadly incidental to the enterprise of law enforcement." *Mary M.*, 54 Cal. 3d at 217–18.

### III. ANALYSIS

#### A. Compliance with the FTCA

Here, Plaintiffs do not oppose the Government's Motion based on the FTCA's exhaustion requirements. (*See generally* ECF No. 136.) Indeed, Plaintiffs admit they never complied with the FTCA. (*See* ECF No. 54 at 3 (Plaintiffs concede they submitted no tort claims to any federal agency); ECF No. 92-1 at 9 (conceding that "Plaintiffs cannot file a claim under the Federal Tort Claims Act and will stand on their contention that the Westfall Act certification is improper").) The Government has also submitted evidence that, at the time Plaintiffs brought this action, they had not submitted an administrative tort claim to the FBI. (*See* ECF No. 44-2.)

Accordingly, the Court finds Plaintiffs failed to comply with the exhaustion prerequisites set forth in the FTCA. Having determined Plaintiffs failed to comply with the FTCA, the Court turns to the validity of the Government's substitution for Zwicky, which Plaintiffs challenge.

### B. Substitution for Zwicky

Because Plaintiffs' failure to comply with the FTCA would be fatal to their state claims against Zwicky if the Court were to rule that the United States was properly substituted as the defendant for those claims, Plaintiffs oppose the Government's Motion on the basis that the substitution was invalid. In evaluating the parties' substitution arguments, the Court is mindful of its prior Order adjudicating the substitution issue with respect to the allegations in Plaintiffs' original Complaint and FAC and the supporting declarations (ECF No. 69), as many of the findings therein remain relevant to the instant analysis of Plaintiffs' allegations in the SAC.

#### *i.   Prior Substitution for Zwicky*

The Government previously filed a notice of substitution for Zwicky with respect to Plaintiffs' Complaint and moved to dismiss all state law tort claims alleged against him at that time. (ECF Nos. 37, 44.) Plaintiffs opposed the Government's motion, as they do now, by challenging the validity of the scope of employment certification in support of the Government's substitution.[2] (*Cf.* ECF Nos. 54, 136.) However, the Court rejected Plaintiffs' challenges to the substitution and found Zwicky was acting within the scope of his employment at all times relevant to this action. (ECF No. 69 at 11–23.) In short, the Court found it foreseeable that Zwicky would — as a deputized officer for a federal anti-gang task force — speak with a gang-involved individual like Altamirano, convey to the proper law enforcement authority whatever

---

[2] Specifically, Plaintiffs argued Zwicky acted outside the course and scope of his federal employment based on the following factual allegations: (1) the website for the Task Force states that the Task Force's purpose is to pursue violent gangs; (2) the FBI was not authorized to investigate the Valadez shooting; (3) the Valadez shooting took place in West Sacramento, not Stockton where the Task Force is located; (4) Sonny was prosecuted for the Valadez shooting in state court; (5) there is no evidence that the Valadez shooting was gang-related; (6) Zwicky told prosecutors that his employer was the Stockton Police Department; (7) Zwicky told prosecutors Altamirano was an informant for the Stockton Police Department; (8) Zwicky said he was not investigating the Valadez shooting; (9) Altamirano is not an FBI informant; and (10) Altamirano was paid for his information relating to the Valadez shooting by the Stockton Police Department. (*See* ECF No. 69 at 6–7.)

8

information was given him by that informant, and upon learning the crime was suspected to be gang-related, continue to coordinate with those officers to gain further evidence. (*See id.* (citing *Nationwide*, 408 F.3d at 1163; *Mary M.*, 54 Cal. 3d at 220–21).) Accordingly, the Court held the United States properly substituted in place of Zwicky for the state tort claims and dismissed those claims for lack of jurisdiction. (*Id.* at 14–15.) The Court also found the proposed FAC would be subject to dismissal on the same grounds and expressed reservations as to whether Plaintiffs would be able to allege further facts to overcome the Government's Westfall Act certification. (*Id.* at 15–23.) Nonetheless, in an abundance of caution, the Court granted Plaintiffs leave to amend to allege such facts. (*Id.* at 23.)

### ii. Instant Substitution for Zwicky in SAC

The instant SAC asserts several state tort claims against all Defendants, including Zwicky, which the Government again seeks to dismiss as they are asserted against Zwicky: False Imprisonment (Claim 7), Assault and Battery (Claim 8), Emotional Distress (Claim 9), Conversion (Claim 10), Trespass (Claim 11), Bane/Unruh Civil Rights Act (Claim 12), Negligence (Claim 13), and Loss of Consortium (Claim 14). (ECF No. 11 at 62–66.)

The Government filed a notice of substitution for Zwicky with respect to the SAC, which is based on the certification by the U.S. Attorney's Office that Zwicky was "acting within the course and scope of his federal employment at the time of the incidents alleged in the Second Amended Complaint." (ECF No. 128; ECF No. 128-1 at 3.) The Government also relies upon the declarations of Zwicky and Andrew B. Manson (the Supervisory FBI Special Agent for the Task Force), which it submitted in support of its prior substitution arguments and which further detail Zwicky's assignment to the Task Force after he was federally deputized in 2014.[3] (*See* ECF No. 129-1 at 3; *see also* ECF No. 128 at 2 (citing ECF Nos. 62-1, 62-2).) The Court views the certification as initially conclusive. *See Saleh*, 848 F.3d at 889; *Billings*, 57 F.3d at 800.

---

[3] For example, the declarations provide that Zwicky "functioned the same as an FBI agent, and was required to follow FBI and Department of Justice policies and practices," that he reported to work every day at the Stockton Resident Agency's FBI office, used an FBI telephone and vehicle, pursued matters within the FBI's geographic jurisdiction, and accounted for his full-time hourly work and overtime pursuant to the FBI's timekeeping requirements. (ECF No. 62-1 at 2; ECF No. 62-2 at 2.)

Because Plaintiffs challenge this certification, it is their burden to show by a preponderance of the evidence that Zwicky was not, in fact, acting within the scope of his employment as a federally-deputized Task Force Officer at the time of the events alleged in the SAC. *Saleh*, 848 F.3d at 889. Plaintiffs attempt to demonstrate Zwicky was acting outside the scope of his federal employment with three general lines of arguments: (1) Zwicky is judicially estopped from claiming his actions fall within the course and scope of his federal employment because he acted in contravention of the Memorandum of Understanding ("MOU") between the FBI and the Stockton Police Department (which Plaintiffs refer to as the "Task Force contract") (ECF No. 136 at 4–13 (referring to ECF No. 62-2 at 3–15); *see also* ECF No. 116 ¶¶ 35–37); (2) the "Task Force contract" is illegal and void and therefore does not support a certification that Zwicky was acting as a Task Force Officer (ECF No. 136 at 13–18); and (3) Plaintiffs' additional allegations show Zwicky acted outside the scope of federal employment during the Valadez investigation because his actions were taken as a Stockton Police Officer, not a Task Force Officer, and he was motivated by personal animus against Plaintiffs that exceeded the scope of federal employment (*id.* at 3, 18–19). Each argument is unavailing as follows.

*a) Task Force "Contract" Arguments*

As an initial matter, the Court notes Plaintiffs' "contract" arguments are inapposite to the instant certification inquiry. First, the Court is not persuaded that the MOU between the FBI and Stockton Police Department regarding their joint Task Force may be construed as a legally-binding contractual agreement as Plaintiffs appear (at times) to contend.[4] (*See* ECF No. 62-2 at 4 ("The purpose of this MOU is to delineate the responsibilities of the [Task Force] personnel[;] formalize relationships between participating agencies for policy guidance, planning, training, public and media relations; and maximize inter-agency cooperation[].")); *see also Black's Law Dictionary* 1088 (11th ed. 2019) (defining "Memorandum of Understanding," also termed "Letter

---

[4] Further, Plaintiffs' contentions that the MOU specifically requires the Stockton Police Department to remain liable for Zwicky's actions, regardless of his assignment to the Task Force (*see* ECF No. 116 ¶ 30), is contradicted by a plain reading of the MOU, which expressly contemplates actions related to the Task Force may fall under the FTCA. (*See, e.g.*, ECF No. 62-2 at 13–14.)

of Intent," as a "[a] written statement detailing the preliminary understanding of parties who plan to enter into a contract or some other agreement; a noncommittal writing preliminary to a contract" that is "not meant to be binding").

More importantly, "[i]n determining whether a defendant is a federal employee, [courts] apply federal law," *Billings*, 57 F.3d at 800, which requires a course-and-scope evaluation pursuant to state *respondeat superior* principles, not contractual definitions. *Saleh*, 848 F.3d at 889; *see also Duffy v. United States*, 966 F.2d 307, 314 (7th Cir. 1992) (the FTCA "was drafted to have an expansive reach and should be applied with an eye to general agency law rather than to the formalities of employment contracts."). Therefore, to the extent Plaintiffs' arguments are predicated on whether Zwicky's behavior conformed perfectly at all times with the guidelines described in the MOU (*see* ECF No. 116 ¶¶ 31–39), or conversely, the contention that the MOU is invalid (*see id.* at ¶¶ 29, 40), Plaintiffs' arguments are unavailing and fail to rebut the Government's certification.[5]

### b) Judicial Estoppel

Plaintiffs additionally appear to argue the Government is estopped from claiming Zwicky was a Task Force Officer due to "judicial admissions" that he was an employee of the Stockton Police Department, as evidenced when (1) an employee of the Stockton City Attorney's Office signed a waiver-of-service form on behalf of Zwicky and sent it to Plaintiffs' counsel, and (2) the multiple times Zwicky introduced himself to others as a Stockton Police Department Officer. (ECF No. 136 at 4–8; *see, e.g.,* ECF No. 116 ¶¶ 31, 38, 171; *see also* ECF No. 11.)

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion . . . [I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Ah Quin v. Cty. of Kauai DOT*, 733 F.3d 267, 270 (9th Cir. 2013) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citations and internal quotation marks omitted)). While several factors may be

---

[5] Having found the terms of the MOU not germane to the course-and-scope analysis under *respondeat superior* principles, the Court declines to address the parties' remaining arguments for and against the validity/legality of the MOU itself.

considered when evaluating whether to apply judicial estoppel, the focus is typically on whether a party that has asserted a certain position in a legal proceeding and succeeded in maintaining that position, attempts to later assert a position that is "clearly inconsistent" with his earlier position, such that the party would derive an unfair advantage or impose an unfair detriment on another party, or create the perception that the court was at one point misled. *See id.* at 270–71; *New Hampshire*, 532 U.S. at 749.

Consideration of the aforementioned factors demonstrates judicial estoppel is inapplicable here because Plaintiffs have not identified any new or prior positions that were asserted by Zwicky and accepted by this Court. Plaintiffs' allegations that Zwicky introduced himself as a Stockton Police Officer to various individuals prior to the initiation of this lawsuit (or other legal proceeding) do not establish a "prior position" asserted by Zwicky and accepted by this Court. Nor can the Court infer any position from the mere fact that a Stockton City Attorney signed a standard waiver-of-service form on Zwicky's behalf (*see* ECF No. 11). Indeed, Plaintiffs identify no relevant legal authority to support such an inference.[6] "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." *New Hampshire*, 532 U.S. at 750–51 (citation omitted). For these reasons, Plaintiffs' judicial estoppel argument is unavailing and fails to rebut the Government's certification.

*c) Plaintiffs' Additional Allegations*

Finally, Plaintiffs argue they have added allegations showing Zwicky was acting as an employee of the Stockton Police Department and not a federal employee with respect to the

---

[6] In an alternative argument, Plaintiffs contend the issue of whether Zwicky was acting as a Task Force Officer "or for each time he acted or failed to act [as such] is a question for the jury." (ECF No. 136 at 9 (citing *United States v. Luna*, 649 F.3d 91, 99 (1st Cir. 2011).) Plaintiffs' reliance on *Luna*, however, is misplaced. *Luna* relates to a criminal prosecutor's burden of proof for purposes of establishing the element of a crime — there, 18 U.S.C. §§ 111 and 1114 (assaulting, resisting, etc. a federal officer/employee while he is engaged in the performance of official duties) — and not scope of employment as it relates to an FTCA certification. *See Luna*, 649 F.3d at 95, 95 n.1, 98. Rather, the legal authorities controlling to the instant case provide that "a judge, not a jury, is the 'appropriate trier of any facts essential to certification.'" *Saleh*, 848 F.3d at 892 n.11 (quoting *Osborn*, 549 U.S. at 252). Thus, Plaintiffs' alternative argument is also unavailing.

Valadez investigation because he was "off duty" from the federal task force during that time and his conduct was motivated by personal animus against Sonny. (*See* ECF No. 136 at 3.)

As previously discussed, the scope of employment analysis is applied extremely broadly under California law. *Nationwide*, 408 F.3d at 1163. Indeed, the only way to establish a government employee's actions exceeded the scope of his employment is to demonstrate the malicious or tortious conduct "*substantially* deviates from the employment duties for personal purposes." *Hoblitzell v. City of Ione*, 110 Cal. App. 4th 675, 683 (2003) (citing *Farmers Ins. Grp.*, 11 Cal. 4th at 1005) (emphasis in original); *see also, e.g., id.* at 678, 685–86 (off-duty police officer, not in uniform, who did not use his official authority in any fashion but posed as a building inspector to force a contractor to shut down work at the construction site — at the request of a disgruntled former employee — was not acting within the scope of his employment); *Monty v. Orlandi*, 169 Cal. App. 2d 620, 624 (1959) (assault by an on-duty bartender in the course of a dispute with his common law wife exceeded scope of employment); *Thorn v. City of Glendale*, 28 Cal. App. 4th 1379, 1383 (1994) (arson committed by a fire marshal out of personal compulsion during a fire inspection exceeded scope of employment).

With respect to allegations of personal animus, Plaintiffs argue the Court should infer Zwicky held a personal and racial animus against Sonny based on the allegations that: (1) Zwicky and his co-conspirators continued to pursue the investigation against Sonny despite knowing Altamirano had given a false witness statement, (2) Defendant Stallions called Sonny a "piece of shit," and (3) Defendants Palmer and Fellows threatened to call INS to deport Sonny and his family to Mexico if they did not cooperate during the interrogation. (ECF No. 136 at 18–19; *see also, e.g.,* ECF No. 116 ¶¶ 214, 261–262, 298, 371–372 ).)

The Court finds Plaintiffs' new allegations are insufficient to support a reasonable inference that Zwicky held a personal and racial animus against Sonny. Notably, the only racially-motivated comments/actions alleged in the SAC are attributed not to Zwicky, but to other Defendants. (*See* ECF No. 116 ¶¶ 214, 298, 371–372.) Further, with respect to general allegations that may be applicable to Zwicky, the Court finds the allegations suggest other, non-personal motivations which appear "broadly incidental" to the objectives of the Task Force. (*See*

*id.* at ¶¶ 111, 156 (allegations that Defendants were under immense pressure from the media and public to apprehend a suspect in the Valadez case); *id.* at ¶¶ 203, 207, 324 (allegations that the purpose of the conspiracy was to use Sonny's arrest to generate new leads from the community and jail)); *Nationwide*, 408 F.3d at 1163; *see also Mary M.*, 54 Cal. 3d at 220–21 (even abuse of authority while performing tasks within the scope of employment were deemed foreseeable as broadly incidental to the enterprise of law enforcement). Thus, the Court cannot conclude Plaintiffs' allegations establish Zwicky pursued the investigation into Sonny due to personal or racial-based animus.

As to Plaintiffs' other purportedly "new" allegations, Plaintiffs do not identify any other allegations they contend are new and sufficient to challenge the certification. (*See generally* ECF No. 136.) Regardless, an independent review of the SAC does not reveal any actions that constitute a sufficiently "substantial deviation" from Zwicky's work on the Task Force to overcome the "extremely broad interpretation" of his scope of employment. *See Henriksen v. City of Rialto*, 20 Cal. App. 4th 1612, 1633–34 (1993); *Tenwolde*, 14 Cal. App. 4th at 1091; *Mary M.*, 54 Cal. 3d at 220–21. Finally, to the extent Plaintiffs argue any involvement in the Valadez investigation exceeds the scope of Zwicky's federal employment because the Valadez case inherently falls within the jurisdiction of West Sacramento and not the Task Force, their argument fails. The Court previously found Zwicky's actions were "broadly incidental to the enterprise" of his employment as a federal Task Force Officer based on essentially the same arguments and allegations and declines to depart from that ruling at this time. (*See* ECF No. 69 at 11–14, 20–22.) Thus, Plaintiffs' attempt to relitigate arguments already rejected by the Court fails.

Accordingly, Plaintiffs' claims against the Government are DISMISSED for lack of subject matter jurisdiction. *Johnson*, 704 F.2d at 1442. In light of the Court's prior extensive discussions on this matter and Plaintiffs' multiple opportunities to amend, the Court finds granting further leave to amend with respect to the substitution issue is unwarranted. *Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009); *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)). Therefore, the dismissal is without leave to amend.

**IV.     CONCLUSION**

For the foregoing reasons, the Government's Motion to Dismiss (ECF No. 129) is hereby GRANTED. The Government's substitution for Zwicky with respect to all state law claims asserted against him in the SAC is AFFIRMED (ECF No. 128), and those claims as asserted against the Government (Claims 7–14) are DISMISSED without leave to amend.

IT IS SO ORDERED.

DATED: March 30, 2021

Troy L. Nunley
United States District Judge

15