UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SONNY MARTINEZ; JESSICA
MARTINEZ, individually and as the
mother and guardian *ad litem* for minors
VJM, GRM, ARM, AND EVM; and
JOANN RAMIREZ,

Plaintiffs,

v.

CITY OF WEST SACRAMENTO; WEST
SACRAMENTO POLICE
DEPARTMENT; JASON M. WINGER;
DAVID M. STALLIONS; MICHAEL
DUGGINS; KENNETH E. FELLOWS;
CARL J. CROUCH; ERIC M. PALMER;
MATTHEW S. LUIZ; LOUIS
CAMERON; DAVID DELAINI; WEST
SACRAMENTO DOES 1 through 25;
CITY OF STOCKTON; STOCKTON
POLICE DEPARTMENT; DAN T.
ZWICKY; STOCKTON DOES 26 through
50; YOLO COUNTY; ROBERT A.
GORMAN; RYAN J. COUZENS; YOLO
COUNTY DOES 51 through 75; RAFAEL
ALTAMIRANO; DOES 76 through 100;
and the United States of America,

Defendants.

No. 2:16-cv-02566-TLN-JDP

**ORDER**

///

///

1

This matter is before the Court on Motions to Dismiss brought by the following Defendants: City of Stockton and Stockton Police Department (collectively, the "Stockton Defendants")[1] (ECF No. 121); Daniel T. Zwicky ("Zwicky") (ECF No. 130); City of West Sacramento, West Sacramento Police Department, Jason M. Winger ("Winger"), David M. Stallions ("Stallions"), Michael Duggins ("Duggins"), Kenneth E. Fellows ("Fellows"), Carl J. Crouch ("Crouch"), Eric M. Palmer ("Palmer"), Matthew S. Luiz ("Luiz"), Louis Cameron ("Cameron"), and David Delaini ("Delaini") (collectively, the "West Sacramento Defendants") (ECF No. 131); and Yolo County, Robert Gorman ("Gorman"), and Ryan Couzens ("Couzens") (collectively, the "Yolo Defendants") (ECF No. 132) (collectively, "Defendants").

Plaintiffs Sonny Martinez ("Sonny"), Jessica Martinez (individually and as guardian *ad litem* for minors ARM and EVM) ("Jessica"), Veronica J. Martinez ("Veronica"), Gabriel R. Martinez ("Gabriel"), and Joann Ramirez ("Joann") (collectively, "Plaintiffs") filed oppositions to each motion. (ECF Nos. 134, 135, 140, 141.) Defendants filed replies. (ECF Nos. 142, 143, 145, 146.)

For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' Motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Allegations

This action arises from Sonny's arrest and criminal prosecution in relation to the October 24, 2015 shooting of Alize Valadez ("Valadez") in West Sacramento. Plaintiffs initiated this action on October 27, 2016, against multiple Defendants involved at all stages of the Valadez investigation, including Sonny's arrest and criminal prosecution. (*See generally* ECF No. 1.) In sum, Plaintiffs claim Defendants conspired to wrongfully investigate, arrest, and prosecute Sonny for the Valadez shooting, despite knowing he was innocent. (*See id.*)

The operative Second Amended Complaint ("SAC") alleges that, after the shooting,

---

[1]    Reference to the "Stockton Defendants" is inclusive of the Stockton DOES 26–50, who Plaintiffs identify as DOE employees of the City of Stockton and Stockton Police Department. (*See* ECF No. 116 ¶ 42.) Specifically, Stockton DOES 26–40 are identified as members of the Stockton Police Department SWAT team. (*Id.* at ¶ 267.)

Defendant Rafael Altamirano ("Altamirano") contacted the Stockton Police Department to provide a witness statement against Sonny. (*See* ECF No. 116 ¶¶ 157, 161–162.) Zwicky worked with Altamirano to corroborate his statement.[2] (*See id.* at ¶¶ 158, 167–168, 176–177.)

Plaintiffs allege Zwicky had prior dealings with Altamirano and was therefore aware that Altamirano had a reputation for dishonesty and untrustworthiness, as well as a drug habit, past criminal convictions, and a history of providing inaccurate and unverifiable information to the Stockton Police Department for money. (*See id.* at ¶¶ 57, 159, 164.) Zwicky also attempted to corroborate Altamirano's story but could not do so. (*See id.* at ¶¶ 164, 167–169, 176–177, 179–180.) Nevertheless, Zwicky introduced Altamirano to Officers Palmer, Delaini, Winger, Crouch, Stallions, Duggins, Cameron, Luiz, and Fellows of the West Sacramento Police Department to assist with the ongoing investigation of the Valadez shooting.[3] (*See id.* at ¶¶ 170–174, 187.) Thereafter, Zwicky and the other Officer Defendants determined Altamirano's statement was false and therefore knew Sonny was innocent, but nevertheless continued to pursue the investigation against Sonny. (*See id.* at ¶¶ 189–199.)

Plaintiffs claim Zwicky, Winger, Palmer, Delaini, Crouch, Stallions, Duggins, Cameron, Luiz, Fellows, and Yolo County Defendants Gorman and Couzens[4] (collectively, "co-

---

[2]    Zwicky is a Stockton Police Department Officer who was federally deputized in 2014 to serve on the Federal Bureau of Investigation's ("FBI") Stockton Violent Gang Safe Streets Task Force (the "Task Force"), a joint task force established by the FBI and Stockton Police Department for purposes of addressing drug trafficking, gangs, and violent crime occurring within the geographic responsibility of the FBI Sacramento Division. (*See* ECF No. 116 ¶ 29; *see also* ECF Nos. 62-1, 62-2.) As adjudicated by a separate order, Zwicky was working in his capacity as a federal employee at all times that he assisted with the Valadez investigation.

[3]    Plaintiffs allege Delaini, Winger, and Crouch all held supervisory positions at the West Sacramento Police Department. (*See id.* at ¶¶ 22–24, 334–335.) Delaini was the Lieutenant in command of the Investigations Unit and Special Investigations Unit of the Support Services Division of the West Sacramento Police Department throughout the Valadez investigation, and Winger and Crouch's direct supervisor. (*See id.* at ¶¶ 20, 22–24, 334.) Winger and Crouch were direct supervisors of the officers assigned to the Investigations Unit. (*Id.* at ¶¶ 23–24, 335.) Stallions, Duggins, Cameron, Luiz, and Fellows were members of the West Sacramento Police Department's Investigations Unit/Special Investigations Unit. (*Id.* at ¶ 22.)

[4]    Gorman and Couzens are the Yolo County Deputy District Attorneys who later prosecuted the criminal case against Sonny. Specifically, Gorman filed the verified criminal complaint against Sonny and Couzens prosecuted the criminal case. (*Id.* at ¶¶ 13–14.)

3

conspirators") conspired together to use Altamirano's false statement and other falsified information to improperly obtain warrants to search and arrest Sonny, and thereafter caused Sonny to be detained for as long as possible in order to generate new leads in an otherwise stalled investigation. (*See id.* at ¶¶ 188, 195, 202–205, 207–209, 219–247, 324, 327–328, 330, 340, 357–359, 402.)

On October 27, 2015, Zwicky, the West Sacramento Officers, and the Stockton Special Weapons and Tactics ("SWAT") team (Stockton DOES 26–40) executed the arrest and search warrants at Sonny's residence in Stockton. (*Id.* at ¶¶ 259–260, 263, 266–267.) Plaintiffs allege the use and presence of the SWAT Team constituted excessive force. (*Id.* at ¶¶ 270, 276.) During that search, officers purportedly damaged the home and unnecessarily seized Plaintiffs' personal property. (*Id.* at ¶¶ 288–289, 302, 304–308, 310.) Plaintiffs further allege that during the course of detaining and handcuffing the home's adult occupants, a DOE SWAT officer's pat-down search of Jessica amounted to sexual abuse. (*Id.* at ¶¶ 290–292.) After or during the search, Plaintiffs allege Jessica was improperly detained and interrogated. (*Id.* at ¶¶ 258, 301.) Sonny was arrested by West Sacramento officers and taken to the West Sacramento Police Department, where he was interrogated without *Miranda* warnings and without an attorney. (*Id.* at ¶¶ 257, 333.)

As a result of Defendants' actions, Plaintiffs allege Sonny was arrested, criminally prosecuted, and incarcerated for 53 days until the case against him was dismissed due to lack of evidence. (*See id.* at ¶¶ 263, 338, 361–362.)

B.     Procedural Background

Plaintiffs initiated this action on October 27, 2016, asserting fifteen causes of action against all Defendants under 42 U.S.C. § 1983 and California law. (ECF No. 1.) Altamirano failed to appear in the action and the Clerk entered his default on May 11, 2017. (ECF No. 59.)

The operative SAC asserts fourteen causes of action, each on behalf of all Plaintiffs and asserted against all Defendants (unless otherwise indicated) for: (1) Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983; (2) Equal Protection violations under 42 U.S.C. § 1983; (3) *Monell* claims against West Sacramento and (4) Stockton; (5) Eighth Amendment

4

1   violations under 42 U.S.C. § 1983; (6) malicious prosecution under § 1983; (7) false

2   imprisonment; (8) assault and battery; (9) emotional distress; (10) conversion; (11) trespass; (12)

3   violations of the Bane and Unruh Civil Rights Acts; (13) negligence; and (14) loss of consortium.

4   (*See* ECF No. 116.)

5          All Defendants — Defendant United States (the "Government"), Zwicky, the West

6   Sacramento Defendants, the Stockton Defendants, and the Yolo Defendants — have moved to

7   dismiss the SAC through their respective Motions.[5]  (ECF Nos. 121, 130, 131, 132.)  Plaintiffs

8   filed oppositions to each Motion (ECF Nos. 134, 135, 140, 141) and Defendants all replied (ECF

9   Nos. 142, 143, 145, 146).

10         **II.     STANDARD OF LAW**

11         Federal Rule of Civil Procedure ("Rule") 8(a) requires that a pleading contain "a short and

12   plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*

13   *(Iqbal)*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must

14   "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell*

15   *Atlantic v. Twombly (Twombly)*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This

16   simplified notice pleading standard relies on liberal discovery rules and summary judgment

17   motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*

18   *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

19         On a motion to dismiss under Rule 12(b)(6), the factual allegations of the complaint must

20   be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give Plaintiff

21   the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the

22   complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff

23   need not allege "'specific facts' beyond those necessary to state his claim and the grounds

24   showing entitlement to relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when

25   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

26   ///

27

28   _____
     [5]      The Court is addressing the Government's motion (ECF No. 129) in a separate order.

1    defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

2    at 556).

3        Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

4    factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

5    1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

6    unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678.  A

7    pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

8    elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

9    ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

10   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

11   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

12   been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

13   U.S. 519, 526 (1983).

14       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

15   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

16   *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . .

17   across the line from conceivable to plausible," is the complaint properly dismissed.  *Id.* at 680.

18   While the plausibility requirement is not akin to a probability requirement, it demands more than

19   "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is

20   "a context–specific task that requires the reviewing court to draw on its judicial experience and

21   common sense." *Id.* at 679.  Immunities and other affirmative defenses may be upheld on a

22   motion to dismiss only when they are established on the face of the complaint.  *See Morley v.*

23   *Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

24       In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

25   thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

26   *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

27   *Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

28       If a complaint fails to state a plausible claim, "[a] district court should grant leave to

1    amend even if no request to amend the pleading was made, unless it determines that the pleading

2    could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

3    (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see*

4    *also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

5    denying leave to amend when amendment would be futile). Although a district court should

6    freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

7    deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

8    *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting

9    *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

10       **III.   ANALYSIS**

11       As an initial matter, Zwicky and the Yolo Defendants make the same threshold argument

12    that the SAC should be dismissed pursuant to Rule 8 as "an impermissible shotgun pleading."

13    (*See* ECF No. 130-1 at 10; ECF No. 132-1 at 10–11.) The Stockton Defendants additionally

14    make this argument, but with respect to Plaintiff's first cause of action only. (*See* ECF No. 121-1

15    at 13–14.) For the reasons discussed herein, the Court finds this argument meritorious, thus

16    warranting dismissal of the entire SAC pursuant to Rule 8. In light of this finding, the Court need

17    not reach the remainder of the parties' arguments.

18       However, the Court is also cognizant of the fact that some of the remaining arguments

19    raised in Zwicky, the Yolo Defendants and the Stockton Defendants' Motions — as well as some

20    of the arguments raised in the West Sacramento Defendants' motion — are potentially dispositive

21    of certain claims or defendants as a matter of law. Therefore, in the interests of judicial

22    efficiency, the Court exercises its discretion to additionally address such arguments on the merits.

23       A.   <u>Zwicky, Stockton Defendants, and Yolo Defendants' Motions to Dismiss</u>

24          <u>Under Rule 8</u>

25       Rule 8 requires "each averment of a pleading to be 'simple, concise, and direct.'" *See*

26    *McHenry v. Renne*, 84 F.3d 1172, 1177–79 (9th Cir. 1996) (affirming dismissal of complaint that

27    was "argumentative, prolix, replete with redundancy, and largely irrelevant"). To comply with

28    Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on

7

what theory, with enough detail to guide discovery." *Id.* at 1178.  Further, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Fed. R. Civ. P. 10(b); *see also Hendrix v. Health & Soc. Servs. of Solano Cty.*, No. 2:15-cv-2689-MCE-EFB PS, 2017 WL 4004168, at *5 (E.D. Cal. Sept. 12, 2017) (requiring "clear headings to delineate each claim alleged and against which defendant"), *report and recommendation adopted*, No. 2:15-cv-02689-MCE-EFB PS, 2017 WL 4340166 (E.D. Cal. Sept. 29, 2017).

"Shotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims, and does not identify which specific facts are allocated to which claim." *Hughey v. Camacho*, No. 13-2665, 2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014); *see also Harrell v. Hornbrook Cmty. Serv. Dist.*, No. 2:14-cv-01595-KJM-GGH, 2015 WL 5329779, at *10 (E.D. Cal. Sept. 10, 2015). Thus, if the factual elements of a cause of action are present but are scattered throughout the complaint and not organized into a "short and plain statement of the claim," dismissal for failure to satisfy Rule 8 is proper. *McHenry*, 84 F.3d at 1178.  Further, "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *Id.* at 1179.  Indeed, Rule 8(d)'s requirement that each averment of a pleading be "'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *Id.*

The instant SAC is anything but simple, concise, and direct.  The SAC is 68 pages long, with over 460 paragraphs.  (*See generally* ECF No. 116.)  Plaintiffs argue the Court has already rejected the shotgun pleading argument, as it was raised against Plaintiffs' FAC.  (ECF No. 134 at 4–5; ECF No. 140 at 3; ECF No. 141 at 3.)  However, unlike the previous FAC, which the Court acknowledged included a list of the claims made against particular Defendants as well as the legal bases for those claims (*see* ECF No. 70 at 11), the names identifying the Defendants against whom Plaintiffs intend to assert each claim has been removed from the headers of Claims One, Two, and Five through Fourteen in the SAC.[6]  Additionally, the SAC fails to specify which of the

---

[6]     In one portion of Claim One, Plaintiffs include a heading titled "Zwicky participation." (ECF No. 116 ¶¶ 259–62.)  No other claim specifies Zwicky's (or any other Defendant's)

seven Plaintiffs are asserting which of the fourteen claims.  *See Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840–41 (9th Cir. 2000) (affirming dismissal of complaint that failed to include a short and plain statement of the claim for each of the 51 plaintiffs and failed to state each plaintiff's claim in separate count).  Consequently, each claim in the SAC (except Claims Three and Four) appears to allege that every Defendant did everything alleged in the SAC to every Plaintiff at all times without discernable distinction.

For example, Claim One realleges and reincorporates the prior 212 paragraphs and 31 pages of the SAC, does not allege what named Defendants it is brought against, and then alleges an additional 156 paragraphs pertaining to several distinct circumstances (all under the vague heading "Fourth and Fourteenth Amendments"), without specifying which facts form a claim against whom and under what theory.  (*See* ECF No. 116 ¶¶ 213–369); *McCue v. S. Fork Union Sch. Dist.*, No. CV-F-10-233 OWW/DLB, 2010 WL 2089524, at *15 n.3 (E.D. Cal. May 21, 2010) ("Wholesale incorporation of all preceding allegations . . . is not helpful to the determination whether a claim has been stated, especially with allegations of this complexity."). The overall result is that each of the eighteen Defendants must estimate where "claims" begin and end and consider every alternative target and legal theory, whether intended by Plaintiffs or not. "Given the number of Defendants and the number of claims, [the collective Defendants] cannot adequately prepare a defense without knowing which Defendant faces which allegations." *Hughey*, 2014 WL 5473184, at *4.  This violates Rule 8.

Accordingly, the Court GRANTS Zwicky, the Yolo Defendants, and the Stockton Defendants' Motions to Dismiss pursuant to Rule 8.

### B. Yolo Defendants' Motion to Dismiss (ECF No. 132)

In the interests of justice and judicial efficiency, the Court additionally addresses the following arguments raised by the Yolo Defendants in their Motion to Dismiss.

///

---

participation in this fashion, though Zwicky's name is mentioned in many of the other claims.  As a result, it is unclear whether Plaintiffs intended for Zwicky to be a Defendant in the remaining claims.

9

1

*i.*        *Defendant Yolo County*

2        The Yolo Defendants seek dismissal of Yolo County on the basis that there are no claims

3   and no factual allegations — *Monell* or otherwise — asserted against it.  (ECF No. 132-1 at 10.)

4   Plaintiffs do not respond to this argument in opposition and therefore concede the argument.

5   Accordingly, Yolo County is DISMISSED from the action without prejudice.

6

*ii.*        *Gorman and Couzens's Prosecutorial Immunity*[7]

7        The Yolo Defendants argue Gorman and Couzens are entitled to absolute prosecutorial

8   immunity from all of Plaintiffs' claims.  The Yolo Defendants identify six discrete claims

9   asserted against Gorman and Couzens amongst Plaintiffs' federal claims in the SAC, the

10   characterization of which Plaintiffs do not dispute: (1) filing or prosecuting the criminal charges

11   (*e.g.,* ECF No. 116 ¶¶ 207, 326, 332, 338, 340–341); (2) seeking continuances (*e.g., id.* at ¶¶ 207,

12   342, 358, 361, 402–403); (3) concealing exculpatory evidence (*e.g., id.* at ¶¶ 208, 311, 327–329,

13   332, 357, 359, 395–397); (4) attempted use of perjured testimony from Altamirano and Zwicky

14   (*id.* at ¶ 364); (5) the classification questionnaire (*id.* at ¶ 330); and (6) alleged fabrication of

15   warrants (*e.g., id.* at ¶¶ 204–206, 217, 218, 233–234).  (ECF No. 132-1 at 12–17.)  The Yolo

16   Defendants argue Gorman and Couzens are entitled to absolute prosecutorial immunity for all of

17   them.  The Court agrees.

18        It is well established that a prosecutor enjoys absolute immunity from suits for damages

19   when he acts within the scope of his prosecutorial duties.  *See Imbler v. Pachtman*, 424 U.S. 409,

20   420–24 (1976) (applying immunity to federal and state claims).  Absolute immunity turns on the

21   function of the conduct, not "whether it was lawful." *Buckley v. Fitzsimmons*, 509 U.S. 259, 271

22   (1993); *see also Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984) ("[I]mmunity

23   attaches to . . . actions . . . performed as part of the prosecutor's preparation of his case, even if . .

24   _____

25   [7]        In support of their Motion to Dismiss, the Yolo Defendants filed a Request for Judicial
Notice of the warrant affidavits and various court records and proceedings from Sonny's Yolo
26   Superior Court criminal case, No. 15-6190, as referenced in the SAC.  (ECF No. 132-4; ECF No.
132-2 at 4–138 (Ex. A–L).)  The Request is hereby GRANTED.  Fed. R. Evid. 201(b); *Bennett v.*
27   *Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in
other courts, both within and without the federal judicial system, if those proceedings have a
28   direct relation to matters at issue") (internal quotations omitted).

1  . 'investigative' or 'administrative.'"); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986)

2  (immunity applies "even if it leaves the genuinely wronged defendant without civil redress

3  against a prosecutor whose malicious or dishonest action deprives him of liberty.") (quotations

4  omitted). Even allegations of conspiracy cannot penetrate absolute immunity where the "ultimate

5  actions" are protected by immunity. *Id.* In short, the immunity is "broadly construe[d]." *Id.* at

6  1076.

7         The Yolo Defendants reference a staggering breadth of controlling authority in support of

8  their argument. (*See* ECF No. 132-1 at 12–17 (citing, *e.g., Buckley*, 509 U.S. at 274 n.5

9  (immunity for decision to prosecute "whether he has probable cause or not"); *id.* at 270 ("making

10  false or defamatory statements during, and related to, judicial proceedings"); *Trice v. Modesto*

11  *City Police Dep't*, No. 1:08-cv-01891-AWI-SMS, 2009 WL 102712, at *9–10 (E.D. Cal. Jan. 14,

12  2009) (prosecutors immune for using illegally obtained information to prosecute); *Broam v.*

13  *Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (prosecutor protected by absolute immunity despite

14  concealing exculpatory evidence); *Demery*, 735 F.2d at 1144 (inducement of false testimony "is

15  not relevant to question of whether immunity attaches"); *Fullman v. Graddick*, 739 F.2d 553, 559

16  (11th Cir. 1984) (prosecutor immune from claims he "conspired . . . to create and proffer perjured

17  testimony"); *Burns v. Reed*, 500 U.S. 478, 492 (1991) (acts taken to procure search and arrest

18  warrants); *Torres v. Goddard*, 793 F.3d 1046, 1053 (9th Cir. 2015) (preparing and filing motion

19  for an arrest warrant)).) The Court finds this authority is directly on-point with respect to the

20  seven claims identified by the parties and is therefore persuaded that immunity attaches.

21         Plaintiffs do not dispute the Yolo Defendants' arguments that the aforementioned seven

22  claims fall within prosecutorial functions entitled to immunity. Instead, they attempt to avoid this

23  immunity by characterizing Gorman and Couzens's actions as "investigatory" instead of

24  prosecutorial in function. (*See* ECF No. 140 at 5–6.) This argument is unavailing. The SAC's

25  allegations do not show Gorman or Couzens interviewed Altamirano or participated in the

26  gathering and corroborating of evidence with the West Sacramento investigation team. Rather,

27  the SAC alleges Gorman and Couzens reviewed the affidavits submitted and signed by Stallions

28  and Winger, made charging and bail decisions, prepared for a preliminary hearing and ultimately

made the decision to dismiss the case — all functions of a prosecutor.  (*See* ECF No. 116 ¶¶ 217–218; *see also* ECF No. 132-2 at 10.)  Indeed, the majority of Plaintiffs' allegations implicating Gorman or Couzens relate to activities occurring *after* Sonny was arrested.  This further contradicts Plaintiffs' investigative function argument, as the investigation at that point had ended.

Alternatively, Plaintiffs argue that prosecutorial immunity does not attach until there is probable cause for an arrest, and there was none here because all the Defendants conspired to use fabricated evidence to obtain an unlawful arrest warrant.  (*See* ECF No. 104 at 6–9.)  But this argument is also unsupported in law.  *See, e.g., Buckley*, 509 U.S. at 274 n.5 (courts "have found a common law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not.").  As a result, Plaintiffs' arguments in opposition fail.

The Court finds Gorman and Couzens are entitled to absolute prosecutorial immunity under the aforementioned legal authorities.  Accordingly, Yolo Defendants' Motion to Dismiss is GRANTED and Gorman and Couzens are DISMISSED from this action.  Having dismissed all the named Yolo Defendants from this action, the Court does not reach the remaining arguments in the Yolo Defendants' Motion.

### C.    Stockton Defendants' Motion to Dismiss (ECF No. 121)

In addition to seeking dismissal of Plaintiffs' first claim under Rule 8, the Stockton Defendants move to dismiss on the bases that: (1) Plaintiffs' non-*Monell* § 1983 claims (Claims One, Two, Five, and Six) fail as asserted against public entities; (2) Plaintiffs' *Monell* claim against City of Stockton (Claim Four) fails; (3) the SAC is devoid of allegations showing Joann, Veronica or Gabriel participated in any events material to Plaintiffs' claims; (4) the Stockton SWAT Officers (Stockton DOES 26–40) are entitled to qualified immunity; (5) the false imprisonment claim (Claim Seven) is not attributable to City of Stockton; (6) City of Stockton is entitled to statutory immunity under California Government Code § 821.6 from certain state law claims (Claims Eight through Thirteen); and (7) absent any viable § 1983 claim, the derivative loss of consortium claim (Claim Fourteen) fails. (ECF No. 121-1 at 12, 14–25.)  The Court will address each argument in turn.

1                              i.   *§ 1983 Claims (Claims One, Two, Five, and Six)*

2          The Stockton Defendants seek dismissal of Plaintiffs' § 1983 claims on the basis that

3  there are no allegations tying any actions directly to the Stockton Defendants and Plaintiffs may

4  not impute liability to the Stockton Defendants under principles of *respondeat superior*.  (ECF

5  No. 121-1 at 9–10, 13–14); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691

6  (1978).  Plaintiffs do not address this argument in their opposition, therefore conceding the

7  argument.  Accordingly, Plaintiffs' non-*Monell* § 1983 claims as asserted against the Stockton

8  Defendants (Claims One, Two, Five, and Six) are DISMISSED without leave to amend.[8]

9                              ii.   *Monell Claim (Claim Four)*

10         To state a *Monell* claim against a municipality, a plaintiff must show: (1) he possessed a

11 constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy

12 amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the

13 moving force behind the constitutional violation.  *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th

14 Cir. 2006) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *City of Canton v.*

15 *Harris*, 489 U.S. 378, 389–91 (1989)).

16         "The custom or policy must be a deliberate choice to follow a course of action . . . made

17 from various alternatives by the official or officials responsible for establishing final policy with

18 respect to the subject matter in question."  *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075

19 (9th Cir. 2016) (en banc) (internal citations and quotation marks omitted).  It must be so

20 "persistent and widespread as to practically have the force of law."  *Connick v. Thompson*, 563

21 U.S. 51, 61 (2011).  Put another way, the practice must have been going on for a sufficient

22 amount of time, such that the "frequency and consistency [of] the conduct has become a

23 traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996);

24 *see also McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ("A plaintiff cannot demonstrate

25 the existence of a municipal policy or custom based solely on a single occurrence of

26 unconstitutional action by a non-policymaking employee.")).  "There also must be a 'direct causal

27 

28  _____
    [8]       In light of the Court's dismissal of Plaintiffs' § 1983 claims, the Court does not reach the
    Stockton Defendants' qualified immunity arguments.

link' between the policy or custom and the injury." *Anderson*, 451 F.3d at 1070 (citations omitted).

Plaintiffs claim City of Stockton "has a policy of giving public funds to informants who give false information to implicate an innocent man in a crime to secure the informant's cooperation, appearance, and false testimony at court hearings." (ECF No. 134 at 6 (citing ECF No. 116 ¶¶ 385–392).)  The Stockton Defendants argue Plaintiffs fail to allege facts establishing any of the elements of a *Monell* claim. (ECF No. 121-1 at 10, 14–16.)  The Court agrees.  The SAC is too convoluted to ascertain which (or whose) protected liberty interest Plaintiffs claim was affected by Stockton's policy.  To the extent Plaintiffs clarify in their opposition that the deprivation is the resulting violation of the California Constitution and several state criminal statutes (ECF No. 134 at 6–7), their claim fails as a matter of law.  *See Ove v. Gwinn*, 264 F.3d 817, 824–25 (9th Cir. 2001) (public entity's alleged violations of state statute fail to state a cognizable § 1983 constitutional violation).  The Stockton Defendants additionally raise the salient point that Plaintiffs' purported "policy" of paying for false information cannot directly result in harm to an individual, if law enforcement does not thereafter utilize the information in a specific manner.  (ECF No. 142 at 5.)  Furthermore, in the instant case, Altamirano's information was utilized by West Sacramento officers, not Stockton.  This attenuation in causation is also fatal to Plaintiffs' claim.  The Stockton Defendants' Motion to Dismiss Plaintiffs' *Monell* claim (Claim Four) is therefore GRANTED without leave to amend.

iii.   *Joann's Failure to Comply with the California Tort Claims Act*

The Stockton Defendants argue Joann's state law claims (Claims Seven through Fourteen) must be dismissed because she failed to submit a government tort claim.[9]  (ECF No. 121-1 at 9, 12; *see also* ECF No. 121-2 at 3–10 (tort claim)); Cal. Gov't Code §§ 911.2, 945.6.  Plaintiffs concede Joann failed to file a tort claim.  (*See* ECF No. 134 at 3.)  Accordingly, all state claims

---

[9]     In support of their Motion to Dismiss, the Stockton Defendants filed a Request for Judicial Notice of the tort claim filed by Plaintiffs Sonny, Jessica, Veronica, Gabriel, ARM, and ERM on April 27, 2016. (ECF No. 121-2.).  The Court GRANTS the Stockton Defendants' request. Fed. R. Evid. 201(b); *see also Moore v. City of Vallejo*, 73 F. Supp. 3d 1253, 1256 (E.D. Cal. 2014) (judicially noticing tort claim as a matter of public record and necessarily relied upon by Plaintiffs in bringing their state law claims).

1  (Claims Seven through Fourteen) as asserted by Joann against the Stockton Defendants are

2  DISMISSED without leave to amend.

3              *iv. Joann, Veronica, and Gabriel's Lack of Participation in Any Material*

4                          *Event (All Claims)*

5          The Stockton Defendants argue all claims brought against them by Joann, Veronica, and

6  Gabriel must be dismissed because none of these Plaintiffs were present for any event concerning

7  the Stockton Defendants — *i.e.*, Sonny's arrest.  (ECF No. 121-1 at 9, 12.)

8          In opposition, Plaintiffs do not address Joann's claims and essentially concede there was

9  no interaction between Veronica and Gabriel and any City of Stockton employee.  (*See* ECF No.

10  134 at 3–4.)  Instead, they maintain Veronica and Gabriel are asserting a negligent infliction of

11  emotional distress ("NIED") claim against City of Stockton for the emotional distress they

12  suffered when their father was arrested.  (*See id.*)  Plaintiffs' argument is unavailing.  Plaintiffs do

13  not assert an NIED claim and they have not sought and obtained leave from the Court to amend to

14  do so.  Further, as the Stockton Defendants correctly note, Veronica and Gabriel have conceded

15  they were not present at the time of Sonny's arrest, thereby negating an essential element of the

16  NIED claim.  (ECF No. 142 at 6–7 (citing *Thing v. La Chusa*, 48 Cal. 3d 644 (1989) (plaintiff

17  must be present at the scene of the injury-producing event at the time it occurs).)  All claims

18  asserted by Joann, Veronica, and Gabriel against the Stockton Defendants are therefore

19  DISMISSED without leave to amend.

20              *v. False Imprisonment (Claim Seven)*

21          The Stockton Defendants argue that no allegations attribute any wrongful conduct to the

22  Stockton SWAT Team during execution of the arrest warrant and that their authority to detain

23  incident to the search was "categorical."  (ECF No. 121-1 at 21 (citing *Muehler v. Mena*, 544 U.S.

24  93, 98 (2005) (holding that "officers executing a search warrant for contraband have the authority

25  'to detain the occupants of the premises while a proper search is conducted.'").)  Further, the

26  Stockton Defendants argue the search of the home was conducted by the West Sacramento

27  officers, as well as Jessica's search and detainment and Sonny's arrest.  (ECF No. 121-1 at 21–

28  22.)  Plaintiffs do not address this argument in opposition and therefore concede the argument.

1   Accordingly, the Stockton Defendants' Motion to Dismiss the false imprisonment claim (Claim

2   Seven) is GRANTED without leave to amend.

3   vi.   *Immunity Under Cal. Gov't Code § 821.6 (Claims Eight through*

4   *Thirteen)*

5   The Stockton Defendants argue Plaintiffs state claims for assault and battery, negligence,

6   emotional distress, conversion, trespass, and Bane Act violations (Claims Eight through Thirteen)

7   must also be dismissed because the Stockton Defendants are statutorily immune from these

8   claims under California Government Code § 821.6 ("§ 821.6").  (ECF No. 121-1 at 22–25.)

9   Section 821.6 provides: "A public employee is not liable for injury caused by his

10   instituting or prospecting any judicial or administrative proceeding within the scope of his

11   employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6.

12   This immunity also extends to actions taken in preparation for formal proceedings.  *Amylou R. v.*

13   *Cty. of Riverside*, 28 Cal. App. 4th 1205, 1209–10 (1994).  Even so, § 821.6, as it applies to

14   police conduct, "is limited to actions taken in the course or as a consequence of an investigation."

15   *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007) (citing *Phillips v. City of*

16   *Fairfield*, 406 F. Supp. 2d 1101, 1118 (E.D. Cal. 2005)) (conduct during arrest is not protected

17   under § 821.6).

18   Plaintiffs' claims all appear to arise from the Stockton SWAT Team's execution of the

19   search and arrest warrants.  In light of the aforementioned authority, the Court is unpersuaded that

20   § 821.6 immunity applies to such a situation.  *Blankenhorn*, 485 F.3d at 487–88.  The Stockton

21   Defendants' Motion to Dismiss Claims Eight through Thirteen based on § 821.6 immunity is

22   therefore DENIED without prejudice.

23   vii.   *Loss of Consortium (Claim Fourteen)*

24   The Stockton Defendants argue that, since no cognizable § 1983 or state law claims

25   remain, Plaintiffs' derivative loss of consortium claim must also fail.  (ECF No. 121-1 at 25.)

26   However, in light of the Court's ruling on Plaintiffs' other state law claims, dismissal on this

27   basis is not warranted.  The Stockton Defendants' Motion to Dismiss Claim Fourteen is therefore

28   DENIED without prejudice.

1          D.      Zwicky's Motion to Dismiss (ECF No. 130)

2          As previously noted, the Court's ruling on Zwicky's Motion to Dismiss based on Rule 8

3   results in a dismissal of the entire SAC, such that the Court need not reach Zwicky's remaining

4   arguments.  Nonetheless, in the interests of justice and judicial efficiency, the Court additionally

5   addresses the following Equal Protection claim argument raised by Zwicky in his Motion to

6   Dismiss.

7          Zwicky argues Plaintiffs' Equal Protection claim (Claim Two) must be dismissed because

8   Plaintiffs did not have leave to amend to add the claim.[10]  (ECF No. 130-1 at 17.)  The Court

9   agrees.  Plaintiffs were not given leave to amend to add an Equal Protection claim to their

10  complaint.  Rather, they were directed to file a motion to amend should they need to further

11  amend their pleading.  (ECF No. 69 at 44.)  Plaintiffs have not filed any motion to amend.  The

12  Equal Protection claim (Claim Two) is therefore DISMISSED without prejudice.

13          E.      West Sacramento Defendants' Motion to Dismiss (ECF No. 131)

14          The West Sacramento Defendants move to dismiss: (1) Plaintiffs' Equal Protection claim

15  (Claim Two) for failure to state a claim; (2) Plaintiffs' *Monell* claim (Claim Three) for failure to

16  state a claim; and (3) all claims asserted against the West Sacramento Police Department as

17  duplicative of the claims against City of West Sacramento.

18          i.      *Equal Protection (Claim Two)*

19          For the same reasons discussed in Zwicky's Motion, the West Sacramento Defendants'

20  Motion to Dismiss the Equal Protection claim is GRANTED.  The claim is DISMISSED without

21  prejudice.

22          ii.     *Monell (Claim Three)*

23          As previously discussed, to state a *Monell* claim against a municipality, a plaintiff must

24  show: (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a

25  policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and

26  _____

27  [10]     The Yolo Defendants filed a Request for Joinder to join Zwicky's Motion to Dismiss with
    respect to the Equal Protection claim argument, on the basis that the issue is not particular to any
    Defendant but common to all and promotes judicial efficiency.  (ECF No. 133.)  The Court
28  hereby GRANTS the Yolo Defendants' unopposed Request.

1    (4) the policy was the moving force behind the constitutional violation. *Anderson*, 451 F.3d at

2    1070 (quoting *Oviatt*, 954 F.2d at 1474; *City of Canton*, 489 U.S. at 388).

3        The West Sacramento Defendants move to dismiss the *Monell* claim on the basis that

4    Plaintiffs' allegations are insufficient to state a claim. (ECF No. 131-1 at 5.) The West

5    Sacramento Defendants argue Plaintiffs fail to identify which Plaintiffs suffered the deprivation,

6    what constitutional right was violated, and how the right was violated. (*Id.*) They further argue

7    Plaintiffs' conclusory and generalized allegations about unspecified policies are insufficient to

8    establish the claim. (*Id.* at 5–7.) The Court agrees.

9        Plaintiffs' argument that their incorporation by reference of prior allegations sufficiently

10   provides the missing elements to the *Monell* claim (ECF No. 135 at 10) is unavailing. Further,

11   there are no allegations suggesting Plaintiff's case amounts to anything more than a "single

12   occurrence of unconstitutional action by a non-policymaking employee." *McDade*, 223 F.3d at

13   1141 ("A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely

14   on a single occurrence of unconstitutional action by a non-policymaking employee."); *see also*

15   *Trevino*, 99 F.3d at 918. Rather, Plaintiffs' claim appears to be based on the alleged events of the

16   Valadez investigation — a singular incident. Plaintiffs fail to support their contention that

17   Delaini, as a supervisor during the investigation, was acting as a final policymaker for West

18   Sacramento with either sufficient factual allegations or applicable state law. *See Christie v. Iopa*,

19   176 F.3d 1231, 1235 (9th Cir. 1999) ("Whether a particular official has 'final policymaking

20   authority' is a question of *state law*.") (citation omitted) (emphasis in original). For all these

21   reasons, the West Sacramento Defendants' Motion to Dismiss Claim Three is GRANTED with

22   leave to amend.

23                          iii.    *Duplicative Claims*

24       The West Sacramento Defendants additionally seek dismissal of Plaintiffs' claims as

25   asserted against the West Sacramento Police Department as duplicative of the claims asserted

26   against the City of West Sacramento. (ECF No. 131-1 at 7–8.) The West Sacramento Defendants

27   assert the West Sacramento Police Department is not a proper Defendant because it is a sub-

28   division of the City of West Sacramento. (*Id.*); *see United States v. Kama*, 394 F.3d 1236, 1239–

                                            18

40 (9th Cir. 2005) (municipal departments, such as police departments, are not "persons" within the meaning of 42 U.S.C. § 1983) (citations omitted). The Court agrees. Further, Plaintiffs do not address this argument in their opposition and are deemed to have conceded the argument. The West Sacramento Police Department is therefore DISMISSED without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Zwicky's Motion to Dismiss the SAC under Federal Rule of Civil Procedure 8 is GRANTED with leave to amend (ECF No. 130); the Motion is also GRANTED as to Plaintiffs' Equal Protection claim (Claim Two) and the claim is DISMISSED without prejudice;

2. The Yolo Defendants' Request for Joinder (ECF No. 133) is GRANTED;

3. The Yolo Defendants' Motion to Dismiss the SAC under Federal Rule of Civil Procedure 8 is GRANTED with leave to amend (ECF No. 132); the Motion is GRANTED as to all of Plaintiffs' claims against Yolo County, Gorman, and Couzens; Yolo County is DISMISSED from this action without prejudice; and Gorman and Couzens are DISMISSED from this action with prejudice;

4. The Stockton Defendants' Motion to Dismiss (ECF No. 121) is GRANTED as to Plaintiffs' non-*Monell* § 1983 claims (Claims One, Two, Five, and Six) as asserted against the Stockton Defendants without leave to amend; the Motion is GRANTED as to Plaintiffs' *Monell* claim (Claim Four) without leave to amend; the Motion is GRANTED as to all state claims (Claims Seven through Fourteen) as asserted by Joann against the Stockton Defendants without leave to amend; the Motion is GRANTED as to all remaining claims asserted by Joann, Veronica, and Gabriel against the Stockton Defendants without leave to amend; the Motion is GRANTED without leave to amend as to Plaintiffs' claim for false imprisonment against the Stockton Defendants (Claim Seven); the Motion is DENIED without prejudice as to Plaintiffs' state claims for assault and battery, negligence, emotional distress, conversion, trespass, and Bane Act violations (Claims Eight

through Thirteen); and the Motion is DENIED without prejudice as to Plaintiffs'

claim for loss of consortium (Claim 14); and

5.  The West Sacramento Defendants' Motion to Dismiss (ECF No. 131) is

GRANTED as to Plaintiffs' Equal Protection claim (Claim 2) against the West

Sacramento Defendants; the Motion is GRANTED as to Plaintiffs' *Monell* claim

(Claim 3) with leave to amend; and the Motion is GRANTED as to Plaintiffs'

claims against the West Sacramento Police Department, which is DISMISSED

from this action without prejudice.

Plaintiffs may file an amended complaint not later than 30 days from the date of electronic

filing of this Order. Plaintiffs are reminded that any amended complaint must comply with the

requirements of Federal Rule of Civil Procedure 8 and that Plaintiffs' amendments are limited to

the surviving claims and Defendants as set forth herein. Defendants' responsive pleading is due

21 days after Plaintiffs file an amended complaint.

IT IS SO ORDERED.

DATED: March 31, 2021

Troy L. Nunley
United States District Judge