1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11    SONNY MARTINEZ, et al.,                    No. 2:16-cv-02566-TLN-JDP

12                Plaintiffs,

13          v.                                    **ORDER**

14    CITY OF WEST SACRAMENTO, et al.,

15                Defendants.

16

17          This matter is before the Court on Defendants Yolo County, Robert Gorman ("Gorman"),

18    and Ryan Couzens's ("Couzens") (collectively, "Defendants" or "Yolo Defendants") Motion for

19    Sanctions against Plaintiffs pursuant to Federal Rule of Civil Procedure ("Rule") 11. (ECF No.

20    148.) Plaintiffs Sonny Martinez ("Sonny"), Jessica Martinez (individually and as guardian *ad*

21    *litem* for minors ARM and EVM), Veronica J. Martinez, Gabriel R. Martinez, and Joann Ramirez

22    (collectively, "Plaintiffs") filed an opposition.[1] (ECF No. 151.) Defendants replied. (ECF No.

23    156.) For the reasons stated herein, Defendants' Motion is GRANTED.

24    ///

25    _____

26    [1]      Defendants City of West Sacramento, West Sacramento Police Department, Jason M.
      Winger, David M. Stallions, Michael Duggins, Kenneth E. Fellows, Carl J. Crouch, Eric M.
27    Palmer, Matthew S. Luiz, Louis Cameron, and David Delaini (collectively, the "West Sacramento
      Defendants") additionally filed a Statement of Non-Opposition to the Yolo Defendants' Motion
28    for Sanctions. (ECF No. 150.)

                                                    1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This action arises from Sonny's arrest and criminal prosecution in relation to the October 24, 2015 shooting of Alize Valadez ("Valadez") in West Sacramento.  Plaintiffs initiated this action on October 27, 2016, against multiple Defendants involved at all stages of the Valadez investigation: The West Sacramento Police Department and officers involved in the investigation; the Stockton Police Department and officers involved in executing the warrants; and the informant who worked with the police.  (*See generally* ECF No. 1.)  In general, Plaintiffs claim all of the Defendants conspired to wrongfully investigate, arrest, and prosecute Sonny for the Valadez shooting, despite knowing he was innocent.  (*See id.*)

On October 27, 2017, Plaintiffs moved to amend the complaint to add Yolo County and Yolo County District Attorney's Office prosecutors Gorman and Couzens as Defendants and assert new claims arising under the Fifth and Sixth Amendments.  (ECF No. 64.)  The Court granted Plaintiffs' motion.  (ECF No. 70; *see also* ECF No. 69 at 15–44 (granting motion as to each separate Defendant).)

On February 7, 2019, Plaintiffs filed the First Amended Complaint ("FAC").  (ECF No. 71.)  With respect to the Yolo Defendants, the FAC alleged: Gorman falsely "testified as a witness under oath" (*id.* at ¶¶ 276, 285, 298); Gorman and Couzens either interrogated or directed the interrogation of Sonny at the jail as part of the classification process without advising Sonny of his *Miranda* rights (*id.* at ¶¶ 255–59); Couzens improperly sought five continuances, including on the final day of the case, which the state court refused (*id.* at ¶¶ 304–305; *see also id.* at ¶¶ 277, 293, 296, 306, 308); another Defendant agreed to provide perjured testimony at the preliminary hearing (*id.* at ¶ 299); and the collective Defendants failed to disclose exculpatory information in Sonny's criminal case (*id.* at ¶¶ 290, 292, 294–95).

On June 4, 2019, in response to the FAC, defense counsel emailed Plaintiffs copies of the jail classification questionnaire that Plaintiffs allege was fraudulent, the *Ramey* arrest warrant, and a certified copy of Sonny's full criminal court file with certified docket and certified transcripts from every hearing that occurred in the criminal case.  (*See* ECF No. 156 at 2.)  Defendants maintain these records were provided informally to Plaintiffs in an attempt to help

facilitate Plaintiffs' ability to conduct an "inquiry reasonable under the circumstances" before "presenting to the court" certain disputed factual contentions against Gorman and Couzens in the amended complaint. (*Id.* at 1–2.)

On June 10, 2019, all Defendants, including the Yolo Defendants, moved to dismiss the FAC. (*See* ECF Nos. 77, 90, 107.) The Yolo Defendants' motion advanced several arguments, including the argument that Plaintiffs' claims were barred by absolute prosecutorial immunity. (*See generally* ECF No. 107.) In support of their motion, the Yolo Defendants submitted the same records it had provided informally to Plaintiffs and requested the Court take judicial notice that: the court records reflected Couzens made only continuance motions (and only two of them, not five); Gorman did not testify at any proceeding in Sonny's criminal case, but merely signed the criminal complaint; and no fruit of any "interrogation" at the jail was "used," as required for Plaintiffs' Fifth Amendment claims. (ECF Nos. 107-2, 107-3.)

In their briefing, Plaintiffs repeatedly alluded to further amending the FAC and ultimately filed a motion to amend. (*See* ECF Nos. 92, 115.) The Court thus elected to vacate the pending motions to dismiss and directed Plaintiffs to file "a single, comprehensive Second Amended Complaint that complies with the Court's previous orders." (ECF No. 115.)

On October 21, 2019, Plaintiffs filed the Second Amended Complaint ("SAC"). (ECF No. 116.) The SAC added the following new allegations: that "[o]n information and belief," Gorman and Couzens were involved in a judicial deception conspiracy in which they advised the Defendant officers how to obtain warrants by attesting to false information; that Gorman and Couzens filed *ex parte* affidavits with the criminal court bearing on Sonny's right to bail; that Couzens forged a jail classification questionnaire with incriminating statements against Sonny; that Couzens authorized bribing Defendant Altamirano for false testimony against Sonny; and that Gorman falsely "testified" that Sonny was a street gang member. (*Id.* at ¶¶ 204, 217, 330, 341, 350, 364, 397.) Meanwhile, the SAC continued to allege that Couzens sought five continuances to keep Sonny in jail (*id.* at ¶¶ 362, 402, 403, 404), and it omitted all prior allegations about Sonny being interrogated at the jail (*see id.* at ¶¶ 330).

On December 16, 2019, the Yolo Defendants moved to dismiss the SAC on the basis of

prosecutorial immunity, state statutes of limitation, and for failure to state a claim under Rules 8, 9, 10, and 12. (*See* ECF Nos. 132, 132-1.) Defendants submitted the same court records for judicial notice they previously filed with their motion to dismiss the FAC. (ECF Nos. 132-2, 132-4.)

On January 15, 2020, counsel for the Yolo Defendants directly provided Plaintiffs' counsel, Mr. Thorn, the court records from Sonny's criminal case and proposed Rule 11 Motion and requested Plaintiffs withdraw their claims based on factual allegations directly contradicted by the court record and transcripts of the proceedings. (ECF No. 148-2 at 2.) The parties met and conferred on this matter for approximately three months, but Plaintiffs ultimately refused to alter their pleadings. (*See id.* at 2–3, 5–28.)

On April 14, 2020, the Yolo Defendants filed the instant Motion for Sanctions under Rule 11.[2] (ECF No. 148; ECF No. 148-1 at 6.) Defendants' Motion additionally expresses concern that the Court would assume the contested allegations had a factual basis and deny the pending motion to dismiss. (ECF No. 148-1 at 6 n.1.) Defendants seek both monetary sanctions, as well as a Court order that Plaintiffs withdraw the identified contentions against Defendants or show cause why they do not violate Rule 11. (*Id.* at 7.) Plaintiffs opposed the Motion and Defendants replied. (ECF Nos. 151, 156.)

On March 31, 2021, the Court granted the Yolo Defendants' motion to dismiss. (ECF No. 159.) Plaintiffs were granted leave to amend certain claims as asserted against other Defendants. (*See generally id.*) However, there are no remaining Yolo Defendants in this action and there is currently no operable complaint before the Court.[3]

---

[2]    In support of their Rule 11 Motion, Defendants filed a Request for Judicial Notice of certain facts arising from the court file and transcripts of proceedings from Sonny's Yolo Superior Court criminal case, No. 15-6190, as referenced in the SAC. (ECF No. 149; ECF No. 148-3 at 9–158 (Ex. B–L).) The Court notes Defendants' Exhibit L appears to be a duplicate of Exhibit K. (*See* ECF No. 148-3 at 127–140.) Regardless, the Request is hereby GRANTED. Fed. R. Evid. 201(b); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotations omitted).

[3]    Nevertheless, the Court retains jurisdiction over the parties for purposes of a Rule 11

## II.  STANDARD OF LAW

Under Rule 11, by signing a document, an attorney certifies that (1) he has read the pleadings or motions he filed and (2) the pleading or motion is "well-grounded in fact," has a colorable basis in law, and is not filed for an improper purpose. Fed. R. Civ. P. 11(b); *Smith v. Ricks (Ricks)*, 31 F.3d 1478, 1488 (9th Cir. 1994). Rule 11 "is designed to deter attorneys and unrepresented parties from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis; no showing of bad faith or subjective intent is required." *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 173–74 (C.D. Cal. 2002); *c.f. Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) ("[A] paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make [a] 'reasonable inquiry' beforehand."). Rule 11 also "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention." 1993 Comments to Fed. R. Civ. P. 11 ("[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention."); *Holgate*, 425 F.3d at 680 (sanctions warranted when a party refuses to withdraw an untenable position or to acknowledge candidly that it does not currently have evidence to support a specified allegation after receiving a Rule 11 motion); *see also G.C. & K.B. Invs., Inc. v. Wilson (Wilson)*, 326 F.3d 1096, 1110 (9th Cir. 2003) ("[S]uccessive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11.").

When, as here, a "complaint is the primary focus of Rule 11 proceedings," the Ninth Circuit requires "a district court [to] conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has

inquiry and addresses the merits of Defendants' Motion. *See Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (court retained jurisdiction over attorney, after he withdrew as counsel, regarding Rule 11 certification in pleading filed prior to withdrawal, on basis that the Rule 11 inquiry is made as of the time of the signing of the certification on the questioned document).

conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted); *Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1142 (9th Cir. 1990) (whether a pleading is sanctionable must be based on, among other factors, an assessment of the knowledge that reasonably could have been acquired at the time the pleading was filed). The reasonableness standard applies the perspective of "a competent attorney admitted to practice before the district court." *Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003) (quoting *Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir. 1986)).

In addition, section (c) of Rule 11 provides a "safe harbor" period of 21 days, during which time the moving party must allow the opposing party to retract the offending pleading before it may file its Rule 11 motion with the court. Fed. R. Civ. P. 11(c)(2). In the Ninth Circuit, the procedural requirements of the "safe harbor" provision are mandatory and therefore strictly enforced. *Blumberg v. Gates*, 152 F. App'x 652, 653 (9th Cir. 2005) (citing *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1988)).

If all provisions of Rule 11 have been met, the Court "may" issue sanctions. Fed. R. Civ. P. 11(c)(1). Sanctions are limited to what is "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(b)(2)(A); *see also* 1993 Comments to Fed. R. Civ. P. 11 (sanctions may include striking the offending paper, issuing an admonition reprimand, or censure, requiring participation in seminars or other educational programs, ordering a fine payable to the court or fees to the moving party, and referring the matter to disciplinary authorities). However, sanctions may be imposed even when only a portion, not the entirety, of a pleading is frivolous. *See Holgate*, 425 F.3d at 676–77 (affirming Rule 11 sanctions based solely on finding that one of the plaintiffs' claims lacked legal merit) (quoting *Townsend*, 929 F.2d at 1364). The Court has broad discretion to choose the appropriate type of sanction to achieve Rule 11's goal of deterring future violations. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962). "If [the court] decides not to impose sanctions, some reasoned basis for deciding not to do so is required . . . ." *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir.

///

1994); *see also Townsend*, 914 F.2d at 1144 (cautioning that district courts should give "thorough explanations of their reasons for imposing sanctions.").

## III.    ANALYSIS

### A.    Safe Harbor

As an initial matter, the Court finds Defendants complied with the procedural requirements of Rule 11(c)'s safe harbor provision. Defendants provided Plaintiffs a copy of the proposed Rule 11 Motion and began the meet and confer process on January 15, 2020 and did not file the instant Motion until April 14, 2020. (*See* ECF No. 148; ECF No. 148-2 at 2); Fed. R. Civ. P. 11(c)(2). Thus, Plaintiffs had well over the 21 days required under the safe harbor provision to respond.

Plaintiffs do not argue Defendants failed to comply with the safe harbor provision. Rather, Plaintiffs argue Defendants harassed Mr. Thorn for months before filing the instant Motion, then filed the motion at a time when Mr. Thorn was experiencing personal hardships as well as facing filing deadlines for opposing multiple motions to dismiss the SAC.[4] (ECF No. 151 at 2, 4.) Indeed, Plaintiffs appear to argue Defendants themselves violated Rule 11 with this "harassing" behavior and request sanctions for costs incurred to oppose Defendants' Motion. (*Id.* at 2.) Plaintiffs' argument is unavailing.

The Ninth Circuit has upheld Rule 11 sanctions against attorneys for failing to conduct the required reasonable inquiry prior to filing, even where the attorney had only a short amount of time in which to file a pleading. *See, e.g.*, *Business Guides v. Chromatic Communications Enters.*, 892 F.2d 802, 812–13 (9th Cir. 1989) (attorney's deficient inquiry was not excused by the purportedly short time frame he had to complete a reasonable inquiry prior to filing initial TRO papers, including only two hours to review an affidavit prior to filing). Here, by contrast, Defendants not only provided Mr. Thorn the proposed Rule 11 Motion nearly three months prior

---

[4] In reply, Defendants assert Mr. Thorn never informed them of the personal hardships he was dealing with at that time. A review of the docket also reflects Plaintiffs did not request any extensions of time for any of their filings. Further, the motion for sanctions was filed on April 14, 2020, over two months after Plaintiffs filed their multiple oppositions to the motions to dismiss the SAC. (*Compare* ECF Nos. 134, 135, 136, 140, 141 *with* ECF No. 148.)

1  to filing the Motion, they also commenced informal meet and confer discussions as early as June

2  4, 2019, when they initially provided Plaintiffs copies of Sonny's criminal case records.  (*See*

3  ECF No. 148-2 at 2–3, 5–28; ECF No. 156 at 2.)  Thus, Mr. Thorn had ample time to consider

4  Defendants' requests to remove the contested allegations prior to the filing of the instant Rule 11

5  Motion.  Further, the Court declines to construe defense counsel's generous attempts to

6  accommodate Mr. Thorn's scheduling needs during the meet and confer process as "harassment."

7  Plaintiffs' request for Rule 11 sanctions is therefore DENIED.

8                    B.       Adequate Factual and Legal Basis

9         A claim is "well grounded in fact if an independent examination reveals some credible

10  evidence in support of a party's statements."  *Himaka v. Buddhist Churches of Am.*, 917 F. Supp.

11  698, 710 (N.D. Cal. 1995) (citations and internal quotations omitted).  A claim that has some

12  plausible basis, even a weak one, is sufficient to avoid sanctions under Rule 11.  *See United Nat'l*

13  *Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117–18 (9th Cir. 2001).

14         Here, Defendants move for Rule 11 sanctions on the basis that several of Plaintiffs'

15  factual contentions lack evidentiary support because they are either contradicted by the record or

16  inconsistent with Plaintiffs' prior allegations, or they consist of facts that Plaintiffs could neither

17  know nor infer from any source.  (ECF No. 148-1 at 6.)  In light of the fact that the Court has

18  since dismissed the entire SAC in part due to Plaintiffs' failure to state a claim or comply with

19  threshold pleading requirements under Rule 8 (*see* ECF No. 159 at 7–9), the Court finds the first

20  prong of the Rule 11 inquiry is satisfied.  *See Holgate*, 425 F.3d at 676–77 (claim lacked legal

21  merit where it failed to meet threshold Rule 8 pleading requirements); *Christian*, 286 F.3d at

22  1127.  However, the Court additionally finds the specific allegations contested by Defendants

23  lack an adequate factual or legal basis for the reasons further discussed herein.

24         Specifically, Defendants provide six examples of the purportedly baseless claims, which

25  the Court will address in turn: (1) judicial deception regarding obtaining warrants (ECF No. 148-1

26  at 14–15); (2) jail classification/interrogation regarding gang affiliation (*id.* at 15–19); (3) *ex*

27  *parte* affidavits (*id.* at 19–20); (4) continuances and dismissal (*id.* at 20–21); (5) perjury and

28  bribery (*id.* at 21–22); and (6) Gorman's "testimony" about gang membership (*id.* at 22–23).

1              *i.*       *Judicial Deception Regarding Obtaining Warrants*

2         Defendants challenge Plaintiffs' new allegation that Gorman and Couzens provided legal

3 advice to the Defendant officers on how to successfully apply for warrants using false

4 information:

> On inforamtion and belief, Winger, Crouch, and Stallions contacted Groman and Couzens for legal advice about proceeding with the troubling confiramtion that Altamrinao was not telling the truth. On infroamtion and belief and based on what trasnpired, Gorman and Couzens they could apply for warrants with false affidavits that conelaed the fact there was no digital evidnce to corrobroate Altrmiranos story and misrepresented that: Sonny Martinez as a violent gang member and memebr of the Bario Franklin Norteno street gang; that Sonny Marteinz has an extensive criminal hsitory that incldues gang activity; that the shooting was gang related when there was not one scrap of evidnce a gang memebr shot Alize Valadez or shot Alize Valadez for a gang; that grossly misrepresemnted the eye witness statement; misrepresneted the scene; compeltely fabricated a story about an anonymous call that does not exist; compeletlyy fabricated a story about the need to seal the PC affidavits to protect the witness when, had Altamirnao's story been true and Sonny Martiez been the real shooter, the police disclosed his identify in one of the frist questions of their interrogation of Sonny Marteinz (Who did you call?); the complelty fabricated story that Altamrinao did not ask for money when Zwicky and the other members of the cosniarcy knew all along he expected money and would be paid by the Stockton Police Deaprtment in the ordinary course under its custom and practice; and the penultimate fraud on the court that Altaminrao is relaible, and other equally appaling and illega miscondcut.

18 (*Id.* at 14 (quoting ECF No. 116 ¶ 204 (grammar and spelling errors in original)[5]).) Defendants

19 argue Plaintiffs articulate no reasonable factual basis for this claim, which cannot be saved merely

20 by affixing the phrase "on information and belief." (*Id.* at 14–15.) Further, Defendants submit

21 declarations in which Gorman avers he did not advise the police to make any false statements, nor

22 was he aware that any facts gathered by the police were untrue, and Couzens avers he had no

23 discussion with the police regarding the pre-complaint warrants whatsoever.[6] (*Id.* at 15; ECF No.

---

[5]      The quoted passage is but one example of the swamp of incoherent arguments, misspellings, and grammatical errors that the Court was required to wade through in order to accomplish a merits review of the instant motion. Counsel is cautioned to take better care in drafting his pleadings in the future.

[6]      Indeed, this allegation appears to be contradicted — at least as asserted against Gorman — by allegations in Plaintiffs' April 27, 2016 government tort claim, in which they allege "Gorman

148-3 at 3; ECF No. 148-4 at 2; *see also* ECF No. 148-2 at 2 (declarations provided to counsel during meet and confer on January 30, 2020).)

In opposition, Plaintiffs appear to concede that they have no direct evidence of the facts asserted in ¶ 204, but instead assert that a reasonable inference of the conspiracy and Gorman and Couzens's liability may be drawn based on unspecified "circumstantial evidence (documents and testimony)" in Mr. Thorn's possession, that asserting an allegation "on information and belief" is appropriate under these circumstances, and that sanctions should be denied at this time because Plaintiffs expect discovery to provide information that establishes Gorman and Couzens's liability. (*See* ECF No. 151 at 11–13.) Plaintiffs additionally appear to argue the allegation is supported in a general sense because all knowledge of the Valadez investigation is imputed to Gorman and Couzens based on the "presumption and duties and common knowledge" that "investigating officers and prosecutors have a 'closely aligned' working relationship." (*Id.* at 8–9.) The Court finds Defendants have the better arguments.

*a) "On Information and Belief"*

Defendants correctly note the context of ¶ 204 does not suggest the allegations are to be *inferred* from circumstantial evidence and other presumptions, as Plaintiffs now argue. (*Id.* at 11; ECF No. 156 at 6.) Rule 11(b) provides that, by submitting a pleading to the court, the signatory is *always* certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the allegations submitted in the pleading have a factual and evidentiary basis. Fed. R. Civ. P. 11(b). At most, alleging certain facts "on information and belief" may connote the plaintiff lacks personal knowledge about certain facts but has obtained hearsay evidence or other secondhand information. *See McGuire v. Recontrust Co.*, No. 2:11-CV-2787 KJM-CKD, 2013 WL 3863903, at *6 (E.D. Cal. Jul. 24, 2013); *see also Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) ("Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the

discovered the police officers filed false and misleading affidavits to obtain the warrants" after Sonny was arrested. (*See* ECF No. 132-3 at 9.)

belief is reasonably based."). Nonetheless, the addition of the phrase "on information and belief" to an allegation is typically surplusage where it is already required by the Rule and therefore presumed. *See Gaudin v. Saxon Mortg. Servs. Inc.*, No. C 11-1663 RS, 2011 WL 5825144, at *2 (N.D. Cal. Nov. 17, 2011). Alternatively, if a party does not have evidentiary support for his allegation at the time of filing but "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," Rule 11 expressly requires that the allegation be identified as such. Fed. R. Civ. P. 11(b)(3).

Here, Plaintiffs allege an incredibly fact-specific account of a conversation between the prosecutors and investigating officers that suggests it is based on fact and direct evidence, rather than inference. (*See* ECF No. 116 ¶ 204.) Plaintiffs do not expressly indicate, as required under Rule 11(b)(3), that the allegation is only "likely to have evidentiary support" after discovery. (*See id.*); Fed. R. Civ. P. 11(b)(3). Accordingly, the allegation has been certified as having evidentiary support, to the best of counsel's knowledge, information, and belief, based on a reasonable pre-suit inquiry. Fed. R. Civ. P. 11(b); *Gaudin*, 2011 WL 5825144, at *2. Plaintiffs' use of the phrase "on information and belief," might be construed to connote that Plaintiffs possess some form of hearsay or secondhand evidence of the identified conversation to support their claim. *See McGuire*, 2013 WL 3863903, at *6. However, Plaintiffs fail to include any factual support or to suggest the source of information they relied on in formulating this specific claim against Gorman and Couzens in the SAC or in opposition to the instant Motion. *See id.* (rejecting claims made "on information and belief" where the plaintiff failed to include "any factual support even suggesting the source of the information or other detail rendering the claims plausible"); *see also In re Connetics Corp. Sec. Litig. (Connetics)*, 542 F. Supp. 2d 996, 1005–06 (N.D. Cal. 2008) (finding plaintiffs failed to personally investigate their claims against the defendants where plaintiffs did not indicate to the court what sources were used to support the specific contested claims). Simply affixing the term "on information and belief" to ¶ 204 does not grant Plaintiffs free license to assert a multitude of specific facts without any evidentiary basis. *See* 1993 Comments to Fed. R. Civ. P. 11 (allegations made "on information and belief . . . is not a license to join parties, make claims, or present defenses without any factual basis or

justification"); *see also Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at

*1 (N.D. Cal. Mar. 19, 2014) ("Despite the common appearance of that phrase in practice, it is

not a recognized pleading device under the rules" but rather "creates [an] inference that plaintiff

likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in

speculation to an undue degree."). Therefore, Plaintiffs' use of the phrase "on information and

belief does not relieve [them] from the obligation to conduct an appropriate investigation into the

facts that is reasonable under the circumstances." *Id.* at *2 n.3; 1993 Comments to Fed. R. Civ. P.

11.

To the extent Plaintiffs attempt to pivot from their initial position by now asserting the

specific factual allegations put forth in ¶ 204 were not supported by evidence, but merely a

reasonable inference for which Plaintiffs expected to find evidentiary support through future

discovery, Plaintiffs' arguments are unavailing. As previously noted, no such caveat is asserted

in the SAC. *See* Fed. R. Civ. P. 11(b)(3); *Gaudin*, 2011 WL 5825144, at *2. Consequently, by

asserting such a position now, Plaintiffs concede they violated Rule 11(b)(3) at the time they filed

the SAC. The remainder of Plaintiffs' argument is hopelessly circular: they essentially argue that,

because Defendants all knew Sonny was innocent but agreed to put him in jail anyway, it may be

inferred from the fact that the magistrate judge issued warrants that the officers told the

prosecutors Altamirano was lying and the prosecutors conspired with the officers to submit

falsified affidavits in order to obtain the warrants. For the foregoing reasons, Plaintiffs fail to

demonstrate any factual or evidentiary basis for the allegations in ¶ 204 exists. *See McGuire*,

2013 WL 3863903, at *6; *Connetics*, 542 F. Supp. 2d at 1005–06.

### b) Presumption of Knowledge

Plaintiffs' alternative argument that the specific conversation described in ¶ 204 may be

inferred based on the widely accepted principle that prosecutors and police have a "closely

aligned working relationship" is unsupported in law. The cases cited by Plaintiffs are

distinguishable because they all relate to a prosecutor's duty to disclose exculpatory evidence in a

criminal case under *Brady v. Maryland*, 373 U.S. 83 (1963). *See, e.g.*, *In re Brown*, 17 Cal. 4th

873, 879–80 (1998); *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 824–25 (10th Cir. 1995);

12

*Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995). In short, under *Brady* and its progeny, the police are considered agents of the prosecutor, such that any knowledge of exculpatory evidence is imputed to the prosecutors. *See id.* Plaintiffs do not identify any case law that equates imputed knowledge under *Brady* to actual knowledge for purposes of establishing a civil conspiracy claim. *Cf. ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016) ("[C]onspiracy involves actual knowledge of the plan."). Indeed, some of the cases on which Plaintiffs rely clearly indicate this imputed knowledge principle is limited to *Brady* claims. *See, e.g.*, *Smith*, 50 F.3d at 824 ("For purposes of *Brady*, 'knowledge by police of investigators is . . . imputed to the prosecution.'"); *see also id.* at 825 ("[T]he police are considered agents of the prosecution for *Brady* purposes"). For these reasons, Plaintiffs' argument is unavailing.

### c)  Applicability of Affidavits in Rule 11 Inquiry

Finally, Plaintiffs fail to substantively address Gorman and Couzens's declarations. Rather, they dismiss the declarations out of hand as "scant" and self-serving.[7] (*See* ECF No. 151 at 12.) But Ninth Circuit caselaw indicates such evidence is pertinent to a Rule 11 inquiry. In *Townsend v. Holman Consulting Corporation*, for example, the plaintiff brought claims in federal court to compel his employer's Employee Benefit Plan ("Plan") to pay certain medical benefits after an unsuccessful state court action. *Townsend*, 914 F.2d at 1139. In addition to other defendants, the plaintiff sued the law firm that managed the Plan, alleging that the firm advised the Plan to adopt certain challenged provisions, counseled the Plan's administrators to not make certain payments to the plaintiff, and improperly obstructed the plaintiff's unsuccessful state court suit. *Id.* After the filing of the initial complaint, the firm defendant filed a motion to dismiss and provided sworn affidavits that it had nothing to do with the adoption, implementation, or administration of the Plan and that the firm was retained only for the purpose of litigation. *Id.*

---

[7]   Alternatively, Plaintiffs contend Defendants' Rule 11 Motion must be rejected as nothing more than a thinly-disguised partial-summary judgment motion. (ECF No. 151 at 7.) However, the aforementioned authorities demonstrate this contention is unsupported in law, as courts may consider affidavits in Rule 11 motions even at the motion to dismiss stage. *See, e.g.*, *Townsend*, 914 F.2d at 1139–40; *Regents of Univ. of Cal. on behalf of UC Davis Health Sys. v. Stidham Trucking Inc.*, No. 16-cv-02835-MCE-CKD, 2018 WL 338998, at \*1 (E.D. Cal. Jan. 8, 2018) (granting motion for sanctions filed alongside motion to dismiss original complaint).

The plaintiff did not offer any evidence to rebut the affidavits. *Id.* Instead, he filed a first amended complaint in which he continued to allege the defendant's involvement in the implementation and administration of the Plan. *Id.* The district court found the plaintiff had conducted absolutely no inquiry before filing the first amended complaint and it was undisputed that the law firm played no role in the actions of the Plan which gave rise to the plaintiff's claims against the other defendants. *Id.* The Ninth Circuit upheld the district court's findings that sanctions were warranted on this basis. *Id.* at 1144.

Similarly here, defense counsel mailed Gorman and Couzens's declarations to Plaintiffs on January 30, 2020, in advance of filing the instant Motion. (*See* ECF No. 148-2 at 2.) Under Rule 11, Mr. Thorn was required to investigate the veracity of the affidavits to determine whether any factual basis existed for the contested allegations in the SAC. There is no indication that he did so. Rather, Plaintiffs refused to withdraw the allegations, and their opposition to the instant Motion does not rebut the declarations or provide any evidentiary basis for refusing to withdraw the contested allegations from the SAC. (*See id.* at 27; *see also generally* ECF No. 151.) It is therefore undisputed that Gorman did not advise the police to make any false statements, nor was he aware that any facts gathered by the police were untrue, and Couzens had no discussion with the police regarding the pre-complaint warrants whatsoever. (ECF No. 148-3 at 3; ECF No. 148-4 at 2); *see Townsend*, 914 F.2d at 1139.

For this reason, as well, the allegations set forth in ¶ 204 are factually and legally baseless from an objective perspective. *Christian*, 286 F.3d at 1127.

ii.      *Jail Classification/Interrogation Regarding Gang Affiliation*

Defendants challenge Plaintiffs' new allegation in the SAC that Couzens forged a classification form:

> On information and belief, Couzens gang expert told Couzens he had no case for the gang enhancements Gorman filed against Sonny, so Couzens enlisted the assistance of Doe 55 to fabricate evidence against Sonny using the blank form Sonny signed and information from some very stale documents that are of dubious, at best, and of unknown origin that is not the product of a due process hearing or proceeding. Doe 55 agreed to help Couzens and filled out the form Sonny was ordered to sign in black to make it appear as if Sonny admitted to a lifetime of gang membership, which is false and as of

14

> the time he was arrested for the Alize Valdez shooting Sonny had
> never joined a street gang; had never been a member of a street gang;
> had never been arrested for a gang related crime . . . .

(ECF No. 148-1 at 15–16 (quoting ECF No. 116 ¶ 330 (grammar and spelling errors in original)).) Defendants argue the allegation that Couzens essentially "framed" Sonny as a gang member is not only belied by myriad evidence of Sonny's prior gang involvement previously available to Plaintiffs, it is also contradicted by Plaintiffs' prior allegations. (*Id.* at 16–19.) Further, in the declaration Defendants provided Plaintiffs in advance of this Motion, Couzens avers he "did not contact, consult with, advise or otherwise have any conversation, directly or indirectly, whatsoever with any jail classification officer or officers regarding the preparation of Plaintiff Sonny Martinez's October 27, 2015 jail classification, or his intake process." (ECF No. 148-3 at 4.)

In opposition, Plaintiffs do not dispute the authenticity or accuracy of the evidence from Sonny's criminal case file showing almost 20 years of gang history. Nor do Plaintiffs address Couzens's declaration. Instead, Plaintiffs dispute Defendants' characterization of the evolving allegations in the complaints and argue the allegation is sufficient because it was made "on information and belief." (ECF No. 151 at 13–14.) Again, Defendants have the better argument.

First, the contested allegation appears to be based on a completed jail classification form that Couzens disclosed to Sonny's public defender during discovery in the criminal case. (*See* ECF No. 148-3 at 2, 6–8.) Also included in the criminal case file are booking photographs of Sonny covered in established gang tattoos and classification forms from a different jail in which Sonny previously admitted gang membership. (*Id.* at 4, 143–156.) This evidence, which has been in Plaintiffs' possession prior to the initiation of this lawsuit — and at the latest was served on Plaintiffs with Defendants' motion to dismiss the FAC — demonstrates Plaintiffs' allegation that Sonny was never a gang member and any documents stating such are of "dubious, unknown origin" is not "well-grounded" in fact. Fed. R. Civ. P. 11(b); *Ricks*, 31 F.3d at 1488.

With respect to prior allegations, the FAC alleged Sonny was interrogated at the jail and forced to sign the gang classification questionnaire without first receiving *Miranda* warnings (in ///

violation of his Fifth and Sixth Amendment rights).[8]  (ECF No. 71 ¶¶ 255–59.)  Because a Fifth

Amendment claim will only lie where the accused is compelled to make a "testimonial

communication" that is incriminating, *Fisher v. United States*, 425 U.S. 391, 408 (1986), the clear

import of Plaintiffs' allegations in the FAC is that Sonny signed the classification form after

writing incriminating gang-related information in the form outside the presence of an attorney.

Yet these allegations directly contradict the SAC, which removes all allegations concerning

interrogation — thus suggesting Sonny was not interrogated at all — while including the new

allegation that Sonny was forced to sign a *blank* gang classification questionnaire form that

Couzens later forged to include incriminating gang-related statements.  (*Compare* ECF No. 71 ¶¶

255–259 *with* ECF No. 116 ¶¶ 330, 332, 333.)  Plaintiffs may not amend pleadings to directly

contradict an earlier assertion made in their prior pleadings.  *See Airs Aromatics, Ltd. Liab. Co. v.*

*Victoria's Secret Stores Brand Mgmt.*, 744 F.3d 595, 600 (9th Cir. 2014).  Such contradictory

allegations are considered "false and sham" and thus indicative of a lack of legal or factual basis

for the claim.  *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1144–45 (N.D.

Cal. 2010); *see also Christian*, 286 F.3d at 1129 (upholding issuance of sanctions based on

"chameleon" or "flip-flopping" pleading).

     For the reasons previously discussed, Plaintiffs' failure to address Couzens's declaration

is also problematic.  *See Townsend*, 914 F.2d at 1139–44.  Because Plaintiffs do not refute the

declaration or identify any source of information upon which they base their new allegation, it is

undisputed that Couzens did not discuss Sonny's jail classification form with any jail officer.  *See*

*id.*; *see also Connetics*, 542 F. Supp. 2d at 1005–06.

     Based on this record, the Court finds the contested allegation is factually baseless from an

objective perspective.  *Christian*, 286 F.3d at 1127, 1129; *Stearns*, 763 F. Supp. 2d at 1144–45.

///

///

---

[8]    Incidentally, this allegation in the FAC is contradicted, in turn, by the allegation in the
original Complaint that Sonny was *Mirandized* when he was "booked into the jail."  (ECF No. 1 ¶
246.)

### iii. Ex Parte Affidavits

Defendants challenge Plaintiffs' allegation that "Gorman and Couzens filed *ex-parte* affidavits with the criminal court bearing on Sonny's right to bail but failed to disclose the *ex-parte* communications to Sonny and his public defender . . . ." (ECF No. 148-1 at 19 (quoting ECF No. 116 ¶ 397).) A simple review of the criminal case court records reveals no such *ex parte* affidavits exist or were ever submitted to the state court. (*See* ECF No. 148-3 at 14–76.) As previously noted, these records were available to Plaintiffs long before this action was initiated. Mr. Thorn, an experienced attorney, should reasonably have known how to review a court docket and case file and would have swiftly recognized the existence or absence of any affidavits relating to a bail request. Plaintiffs fail to address this argument at all, and therefore concede the argument. Accordingly, the Court concludes this contested allegation is not "well-grounded" in fact. Fed. R. Civ. P. 11(b); *Ricks*, 31 F.3d at 1488.

### iv. Continuances and Dismissal

Defendants challenge several portions of Plaintiffs' allegations in the SAC relating to the contention that Couzens sought multiple continuances of the preliminary hearing in Sonny's criminal case in order to keep Sonny in jail:

> 1. "[E]very time Couzens was facing a preliminary hearing, he sought and obtained continuances until the court refused to grant him any more continuances . . . " (¶ 207.)
>
> 2. "[On December 18, 2015] the People asked for yet another continuance . . . ." (¶ 361.)
>
> 3. "[On December 18, 2015] [t]he court denied the motion for another continuance . . . ." (¶ 362.)
>
> 4. "Couzens . . . sought five continuance[s] of the preliminary hearing . . . ." (¶ 402.)

(ECF No. 148-1 at 20–21 (quoting ECF No. 116 ¶¶ 207, 361–362, 402).) Defendants point out these allegations are also directly contradicted by the criminal court records that have long been in Plaintiffs' possession. (ECF No. 148-1 at 11, 20–21.) Specifically, the criminal case docket and transcripts of each proceeding show Couzens only requested two continuances. (ECF No.

///

148-3 at 14–140.) Moreover, the transcript of the December 18, 2015 proceeding plainly shows Couzens did not seek a continuance. (*Id.* at 127–133.) Rather, he asked to dismiss the case. (*Id.*)

In opposition, Plaintiffs dispute that the docket and related court documents of Sonny's criminal case submitted by Defendants constitute the "*entire* record" of the case and vaguely allude to unspecified "witness testimony and documents" that support Plaintiffs' allegation that Couzens requested five continuances of the preliminary hearing. (ECF No. 151 at 9–10.) It is unclear what Plaintiffs mean by this argument. Plaintiffs do not identify any actual documents or records they purport are missing from the collective criminal file produced by Defendants. Nor do Plaintiffs contend any filings or proceedings occurred which are not reflected on the docket. Indeed, the cover page to the court records submitted by Defendants is expressly certified by the clerk of Yolo County Superior Court to include the "ENTIRE COURT FILE," and Plaintiffs do not appear to challenge the authenticity or accuracy of this document. (ECF No. 148-3 at 15 (emphasis in original).)

Alternatively, Plaintiffs appear to argue the allegation is founded because some of Couzens's requests for continuances were made to the public defender rather than the criminal court, not all of his requests for continuances were in writing, and not all requests for continuances were reported. (ECF No. 151 at 10.) However, Plaintiffs' attempt to recharacterize the allegations to include informal, off-the-record requests for continuances not made to the court is not well-taken. Plaintiffs expressly allege Couzens "sought and obtained continuances," which requires that the requests were, in fact, made to the court and granted by the court.

In sum, the court records unequivocally refute Plaintiffs' allegation that Couzens sought five continuances of the preliminary hearing. (*See* ECF No. 148-3 at 14–140.) Mr. Thorn, an experienced attorney, should reasonably have known how to review a court docket and case file and would have swiftly recognized the absence of additional motions or other requests to continue the preliminary hearing date. The Court therefore finds the contested allegation is factually baseless from an objective perspective. *Christian*, 286 F.3d at 1127, 1129; *Stearns*, 763 F. Supp. 2d at 1144–45.

///

*v.       Perjury and Bribery*

Defendants contest the following new allegation in the SAC concerning perjured testimony and bribery:

> Zwicky agreed to give perjured testimony at the preliminary hearing and tell the court Altamirano was a reliable informant even though he and all the other co-conspriaotrs had known since before Sonny was arrested that Altamirano was lying and Sonny was innocent; and Zwciky sought and and obtained autroity from Couzens to bribe Altrmaino with publi money from the coffers of the Stockton Police Deaprtment to get him to a preliminanry hearing to give perjured testiomny.

(ECF No. 184-1 at 21 (quoting ECF No. 116 ¶ 364 (grammar and spelling errors in original)).) Defendants argue the allegation is not well-grounded in fact because Plaintiffs allege no facts showing how they gained knowledge of a purportedly secret conversation between Zwicky and Couzens. (*Id.* at 22.) Defendants also argue the allegation lacks a reasonable legal basis because testimony that a witness is "reliable" is impermissible in court. (*Id.* (citing *People v. Coffman*, 34 Cal. 4th 1, 82 (2004) (court erred in permitting expert to give opinion as to whether witness was credible); *People v. Melton*, 44 Cal. 3d 713, 744 (1988) ("Lay opinion about the veracity of particular statements by another is inadmissible"); *People v. Sergill*, 138 Cal. App. 3d 34, 39–40 (1982) (officers may not give testimony "assessing veracity of those who make reports to police")); *see also* Cal. Evid. Code §§ 702, 801, 805 (establishing limitations to scope of lay and expert witness testimony). Defendants additionally point out the email Couzens sent to Sonny's criminal counsel on December 3, 2015 — which is presumably the basis for Plaintiffs' allegation — states Couzens did not intend to call Altamirano as a witness and that Zwicky had requested to pay Altamirano as an informant, not that Couzens provided authorization to do so.[9] (*See* ECF No. 148-3 at 157–58.) Finally, Couzens's declaration expressly avers that there was no agreement to

///

---

[9]    Specifically, the letter states Couzens was going to "Prop 115" Altamirano's statement at the preliminary hearing, which Defendants indicate (and Plaintiffs do not dispute) means Altamirano would not be called as a witness but his statement would be read to the court by a law enforcement witness. *See* Cal. Const. Art. I, Sec. 30(b) (permitting hearsay evidence at preliminary hearings); Cal. Pen. Code § 872(b) (permitting an officer to read declarant statement at probable cause hearing).

provide false testimony or authority to offer a bribe. (*Id.* at 5.) Each of Defendants' arguments is persuasive.

In opposition, Plaintiffs argue they possess a "*mountain* of direct and circumstantial evidence to prove the allegation and prove that all the defendants knew Altamirano was lying." (ECF No. 151 at 10 (emphasis in original).) However, Plaintiffs do not actually identify any of that evidence, or show how it supports the allegation of an agreement to give perjured testimony or to bribe Altamirano to give perjured testimony at the preliminary hearing. *McGuire*, 2013 WL 3863903, at *6; *Connetics*, 542 F. Supp. 2d at 1005–06. Importantly, Plaintiffs neither address Defendants' legal argument nor provide contrary authority in support of their position that an officer may provide testimony regarding the credibility of another witness. Nor do Plaintiffs identify any basis for knowing the manner in which Couzens intended to conduct the preliminary hearing, as it never happened. *Id.* Stated another way, because there was no preliminary hearing and no testimony was ever given, the Court cannot draw any inference that Defendants acted a certain way because they conspired to do so.

Additionally, since the December 3, 2015 email indicates Couzens did not intend to call Altamirano as a witness, it plainly contradicts Plaintiffs' allegation that Couzens approved bribing Altamirano to give false testimony at the preliminary hearing. Finally, Plaintiffs do not refute or even address Couzens's declaration that there was no agreement to provide false testimony or authority to offer a bribe, thus essentially conceding the argument. *Townsend*, 914 F.2d at 1139; *see also Grynberg v. Ivanhoe Energy, Inc.*, 663 F. Supp. 2d 1022, 1024–26 (D. Colo. 2009) (finding allegations lacked a sufficient evidentiary basis where Rule 11 motion included an affidavit stating the defendant never bribed the public official, as alleged, but the plaintiffs "present[ed] no valid argument that they had adequate evidentiary support for the specific allegations. . . .").

Based on the foregoing, the Court finds Plaintiffs' allegation is factually and legally baseless from an objective perspective. *Christian*, 286 F.3d at 1127.

///

///

20

*vi.*      *Gorman's "Testimony" About Gang Membership*

Defendants challenge Plaintiffs' allegations that Gorman falsely "testified" against Sonny:

> Gorman knew when he testified as a witness under oath that the allegations in the criminal complaint were not true; that Altamirano was lying about the call; and that Sonny was innocent of the charges.
> . . .
>
> Sonny was not a street gang member as . . . Gorman testified under oath.

(ECF No. 148-1 at 22–23 (quoting ECF No. 116 ¶¶ 341, 350).) Defendants again point out this allegation is directly contradicted by the criminal court records that have long been in Plaintiffs' possession. (*Id.* at 23.) Specifically, the entirety of the record shows Gorman never "testified as a witness" in any proceeding and, at most, signed the criminal complaint. (*See* ECF No. 148-3 at 14–140.)

In opposition, Plaintiffs appear to concede the only "testimony" Gorman provided occurred when he signed and filed the criminal complaint. Instead, they argue the allegation is nevertheless supported because it may be reasonably inferred from the fact that Gorman knew Altamirano was lying, that Sonny was innocent of the charges, and that he was no longer a gang member or affiliate at the time of the Valadez shooting. (*See* ECF No. 151 at 14.) Further, Plaintiffs reassert that Gorman's knowledge of these facts may be reasonably inferred under the *Brady* doctrine. (*Id.*) Plaintiffs' arguments are again unavailing.

First, the Court is not persuaded that a prosecutor's filing of a criminal complaint is akin to "testifying as a witness under oath" as construed in the SAC, and Plaintiffs cite no authority of any kind that makes this equivocation. Second, while Plaintiffs contend they have testimonial evidence to establish Sonny was not a gang member at the time the shooting occurred, they have not identified any evidence or source of information they relied on to assert that Gorman knew Sonny was no longer a gang member or affiliate at the time of the Valadez shooting (or that Altamirano was lying and that Sonny was innocent of all charges). (*See generally* ECF No. 151 at 14–15); *see also McGuire*, 2013 WL 3863903, at *6. Indeed, Plaintiffs entirely fail to address Gorman's declaration, in which he avers he "was [not] aware that any facts gathered by the police were untrue, nor was [he] ever told that the police were misrepresenting facts." (ECF No. 148-4;

*see Townsend*, 914 F.2d at 1139–44; *Connetics*, 542 F. Supp. 2d at 1005–06.  Further, as

2  previously determined, Plaintiffs have not demonstrated a legal basis for their inference argument

3  based on the *Brady* doctrine.  *Cf. ESG Capital Partners, LP*, 828 F.3d at 1039; *Smith*, 50 F.3d at

4  824.  Finally, to the extent they concede the absence of evidentiary support by arguing that an

5  inference is required, Plaintiffs' allegation runs afoul of Rule 11(b)(3).  Thus, Plaintiffs fail to

6  provide even a weak plausible basis to support their claim against Gorman.  *See United Nat'l Ins.*

7  *Co.*, 242 F.3d at 1117–18.

8  Based on the foregoing, the Court finds the contested allegations are each factually and

9  legally baseless from an objective perspective.  *Christian*, 286 F.3d at 1127; Fed. R. Civ. P.

10  11(b); *Ricks*, 31 F.3d at 1488.

11  C.    Reasonable and Competent Inquiry

12  The second prong of the Rule 11 analysis requires "a fact-intensive" determination as to

13  whether an attorney's inquiry is reasonable under "all the circumstances of a case."  *Townsend*,

14  914 F.2d at 1142.  Thus, Rule 11 creates and imposes on counsel an affirmative duty to

15  investigate the law and facts before filing.  *Rachel v. Banana Public, Inc.*, 831 F.2d 1503, 1508

16  (9th Cir. 1987).  The lawyer may not delegate this duty to another person.  *See Unioil, Inc. v. E.F.*

17  *Hutton & Co.*, 809 F.2d 548, 558 (9th Cir. 1986) ("[A]n attorney who signs the pleading cannot

18  simply delegate to forwarding co-counsel his duty of reasonable inquiry."); *Sec. Farms v. Int'l*

19  *Bhd. of Teamsters*, 124 F.3d 999, 1016–17, n.23 (9th Cir. 1997) (affirming Rule 11 sanctions for

20  failure to "conduct a reasonable inquiry" where counsel accepted statements by its investigator

21  and submitted them to the court, despite receiving prior notice of serious credibility and

22  authenticity issues).  Nor may he blindly accept the word of his client.  *In re Kunstler*, 914 F.2d

23  505, 514 (4th Cir. 1990) ("Blind reliance on the client is seldom a sufficient inquiry.")  To the

24  contrary, under Rule 11, an attorney is required "to dissuade a client from pursuing specious

25  claims, to avoid possible sanctions by the court, as well as unnecessary costs of litigating a

26  worthless claim."  *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 977 (E.D.

27  Cal. 2005) (citation omitted).  Also as previously determined, Plaintiffs' use of the phrase "on

28  information and belief" does not relieve them from the obligation to "conduct an appropriate

investigation into the facts that is reasonable under the circumstances." 1993 Comments to Fed. R. Civ. P. 11; *see also McGuire*, 2013 WL 3863903, at *6; *Connetics*, 542 F. Supp. 2d at 1005–06.

Here, Defendants argue the inclusion of the aforementioned contested factual allegations — including the new allegations and claims impermissibly raised for the first time in the SAC — indicates Plaintiffs' counsel failed to perform his "nondelegable responsibility to personally . . . validate the truth and legal reasonableness of the papers filed, and to conduct a reasonable factual investigation" as required under Rule 11(b). (*Id.* (citing *Connetics*, 542 F. Supp. 2d at 1005).) The Court is inclined to agree.

Defendants submitted undisputed evidence that directly contradicts the contested allegations and demonstrates they lack any factual or legal basis. The vast majority of this evidence — which arises from Sonny's own criminal case file — was not only available to Plaintiffs at the time the criminal case occurred (in 2015) but was additionally provided to Plaintiffs multiple times thereafter: on June 4, 2019, during Defendants' initial informal meet and confer efforts after being joined in this action (ECF No. 156 at 2); on June 10, 2019, with the filing of Defendants' motion to dismiss the FAC (ECF Nos. 107-2, 107-3); on December 16, 2019, when Defendants moved to dismiss the SAC (ECF Nos. 132-2, 132-4); and on January 15, 2020, during formal meet and confer communications related to the instant Motion (ECF No. 148-2 at 2).

In opposition, Plaintiffs argue Mr. Thorn's investigation was reasonable and competent because it included meeting with and obtaining documents from Sonny, scrutinizing the Yolo County Public Defender's case files, and interviewing multiple witnesses and experts. (ECF No. 151 at 5–7.) However, regardless of Mr. Thorn's subjective intent, his actions must be measured against the objective standard of a competent attorney admitted to practice before the district court. *Wilson*, 326 F.3d at 1109 (citing *Zaldivar*, 780 F.2d at 830); *see also Ricks*, 31 F.3d at 1488 ("Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."). As previously noted, a "reasonable inquiry" is that amount of examination into the facts and legal research which is reasonable under "all the circumstances of

a case." *Townsend*, 914 F.2d at 1142. Furthermore, "the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions." *Zaldivar*, 780 F.2d at 831.

Here, a competent attorney, having conducted an objectively reasonable inquiry into the criminal case file records and law, would have concluded that the aforementioned contested allegations were not well-founded. *See Truesdell*, 209 F.R.D. at 174. Based on the evidence and on the face of the pleadings, it is clear that Plaintiffs, at best, ignored the substantial amount of evidence in their possession. Accordingly, the Court concludes Mr. Thorn failed to perform his duty under Rule 11 to "validate the truth and legal reasonableness of the papers filed" and to conduct a reasonable and competent inquiry into all available information before signing and filing the SAC. *Connetics*, 542 F. Supp. 2d at 1005; *Rachel*, 831 F.2d at 1508; *Christian*, 286 F.3d at 1127; *Townsend*, 914 F.2d at 1142. Sanctions are therefore warranted pursuant to Fed. R. Civ. P. 11(c).

D. <u>Appropriateness of Sanctions</u>

Turning to possible sanctions, the Court notes the purpose of Rule 11 is to "deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(b)(2)(A); *see also Hutchinson v. Pfeil*, 208 F.3d 1180, 1183 (10th Cir. 2000) ("[I]n keeping with its 'ultimate goal of deterrence, rather than compensation,' Rule 11 'de-emphasizes monetary sanctions and discourages direct payouts to the opposing party.'") (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997)).

Here, sanctions are justified on the basis of Mr. Thorn's persistent prosecution of claims without any reasonable basis in the law. These sanctions are particularly appropriate where defense counsel gave Mr. Thorn multiple opportunities to withdraw these claims, citing to relevant evidence and legal authority each time to demonstrate Plaintiffs' untenable position, but Mr. Thorn instead persisted to assert and defend the claims without any reasonable basis in fact or law for believing they had any merit. Thus, the Court finds imposing a monetary sanction is necessary to deter Mr. Thorn from further refusing to withdraw or correct contentions after a

///

potential violation is called to his attention or insisting upon a position after it is no longer tenable, as such litigation tactics serve only to waste precious public resources.

While the Court could arguably impose a larger penalty or award fees to deter Plaintiffs' actions in the future, the Court concludes that a sanction in the amount of $1,000.00 is sufficient at this time to promote the goal of deterrence. Fed. R. Civ. P. 11(c)(4); 1993 Comments to Fed. R. Civ. P. 11; *Link*, 370 U.S. at 633. Nonetheless, should Plaintiffs continue to assert allegations that are directly contradicted by facts alleged in their prior pleadings or facts which have been judicially noticed by the Court in prior Orders, the Court is inclined to grant any additional motion for sanctions, including attorneys' fees.[10]

As the SAC was dismissed and Defendants have been dismissed from this action, striking the specific identified allegations is not a valid sanction.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Sanctions (ECF No. 148) is hereby GRANTED as follows:

The Court declines at this time to grant Defendants expenses and attorneys' fees. Instead, Plaintiffs' counsel, Douglas Thorn, is admonished and sanctioned pursuant to Federal Rule of Civil Procedure 11(c) in the amount of $1,000.00, payable to the Court. Mr. Thorn shall issue payment no later than 30 days from the electronic filing date of this Order. Mr. Thorn shall be personally liable for this entire amount and may not shift the cost of these sanctions to Plaintiffs, or otherwise avoid their payment.

IT IS SO ORDERED.

DATED: June 1, 2021

Troy L. Nunley
United States District Judge

---

[10]     Plaintiffs are additionally reminded that any amendments are limited to the surviving claims and Defendants, and Plaintiffs may not assert new claims without first obtaining leave from the Court to do so by way of a properly-noticed motion to modify the scheduling order/motion to amend. (*See* ECF No. 159 at 17, 20.)